THE COUNTY OF HAMILTON, Plaintiff-Appellee, v. THE DEPARTMENT OF REVENUE, Defendant-Appellant.—THE COUNTY OF JEFFERSON, Plaintiff-Appellee, v. THE DEPARTMENT OF REVENUE, Defendant-Appellant.

Fifth District    No. 5—94—0570

Opinion filed May 16, 1996.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Paul Racette, Assistant Attorney General, of counsel), for appellant.

Wayne Morris, State's Attorney, of McLeansboro, and Gary Duncan, State's Attorney, of Mt. Vernon (Norbert J. Goetten and Stephen E. Norris, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellees.

PRESIDING JUSTICE HOPKINS delivered the opinion of the court:

Defendant, the Illinois Department of Revenue (Department), appeals from the circuit courts' orders in two cases on administrative review, in which the circuit court reversed the Department's decisions that underground coal rights owned by two counties, plaintiffs Hamilton and Jefferson Counties, were not tax-exempt properties under section 19.6 of the Revenue Act of 1939. 35 ILCS 205/19.6 (West 1992) (now, as amended, 35 ILCS 200/15—60 (West 1994) (section 15—60 of the Property Tax Code)). On appeal, the Department raises two issues: (1) that the circuit court erred in applying the 1994 Property Tax Code to the instant actions, instead of the 1992 Revenue Act of 1939; and (2) that the circuit court's orders that the Department's findings and rulings that the counties are not entitled to property tax exemptions for underground coal reserves are against the manifest weight of the evidence are erroneous. We affirm for the reasons set forth below.

## I. FACTS

On November 11, 1992, Hamilton County became the owner of approximately 7,000 acres of underground coal reserves pursuant to a quitclaim deed executed by Exxon Coal Resources USA, Inc. (Exxon). No surface rights were involved in the transaction. Hamilton County filed an application for property tax exemption to the county board of review. In its application, Hamilton County sought a tax exemption under section 19.6 of the Revenue Code of 1939 (35 ILCS 205/19.6 (West 1992)) and stated that the county was going to hold this property for future development. Ultimately, the Department denied Hamilton County's application for property tax exemption on the basis that the property was "not in exempt use."

Hamilton County filed for a formal hearing before the Department, and on April 29, 1993, this hearing was held. At the hearing,

Mark Becker, supervisor of assessments and clerk of the board of review for Hamilton County, testified that he had discussions with Steve Humphreys and John Healing of Exxon prior to the Hamilton County board's voting to acquire Exxon's 7,000 acres of underground coal reserves in Hamilton County. From these discussions, Becker learned that Exxon wanted to divest itself of the underground coal rights in Hamilton County, and that Exxon had contacted other coal companies and had advertised that the property was for sale in an effort to do so, to no avail. Exxon next approached Hamilton County to see if the county wished to purchase the coal rights. Becker talked to Steve Lueker, his counterpart in Jefferson County, about the proposed sale, to evaluate the problems, after which he discussed the proposed sale with Hamilton County board members. Becker recommended to the Hamilton County board that the county purchase the undeveloped coal rights. It was Becker's opinion that although the coal reserves were not worth money at that time, perhaps in the future the coal reserves could entice a coal mine to come into the county, and "we would have seven thousand acres that we could give to that coal company." Becker also testified that the county had not leased the coal rights and that there was no prospect of leasing the coal rights in the immediate foreseeable future. Further, the county did not intend to extract coal for profit in the future.

On cross-examination, Becker stated that he was told by Exxon that the coal reserves were of diminished value since the coal has a high sulfur content and is not marketable to utility companies, the coal reserves were not a solid block, and the coal was about 1,000 feet below the surface. The tax assessment of the coal rights at that time was $151,820.

Wayne Morris, State's Attorney for Hamilton County, testified to essentially the same facts as Becker. He, too, was involved in the discussions with Exxon, and the representations made to Becker were the same as were made to him. He also testified that Hamilton County is an economically depressed county, in that it has an unemployment rate of 25%, and the overall business climate in the county is poor.

Eleven applications for property tax exemption under section 19.6 submitted by the City of Mt. Vernon in Jefferson County, Illinois, were admitted as exhibits for both Hamilton and Jefferson Counties. These applications were for property obtained by the city by court order for foreclosure on demolition liens. The 11 lots were small lots located randomly over primarily the south side of the city. In the city's applications for the tax exemption of these lots, the city stated that it was holding the properties for "future development."

The Department granted the city the tax exemptions for these properties.

The administrative law judge for the Department who conducted the hearing recommended that Hamilton County's property tax exemption be denied. In his recommendation, he stated in pertinent part as follows:

> "The extraction of coal is not a governmental function. If and when this coal is extracted, Applicant will have to lease it to a lessee for use for other than public purposes. The eleven lots owned by Mt. Vernon and held for future expansion and development may well be used for municipal or governmental purposes. Consequently, the Department of Revenue correctly exempted them. However in this case, Applicant has failed to suggest how these coal reserves can ever be used for public purposes. In fact, if they are developed they will undoubtedly be developed by a private coal mining company, for profit. Applicant's attorney argues that this is no different than the Mt. Vernon city lots, but that is simply not correct since any development of these coal rights would have to be for a non-public purpose, while the Mt. Vernon city lots may be used for a public purpose. Consequently, I conclude the fee interest in these coal reserves are [sic] held by Applicant and may only be leased to lessees for other than public purposes."

On July 14, 1993, the Department formally denied Hamilton County's property tax exemption application, and Hamilton County timely filed for administrative review of the Department's decision in the circuit court. On July 25, 1994, the trial court reversed the Department's denial of the property tax exemption, finding that the Department's decision was against the manifest weight of the evidence. The Department appeals this decision in case number 93—MR—10.

The facts presented in the administrative review case brought in Jefferson County are almost identical to those presented in the Hamilton County case. On June 29, 1992, a quitclaim deed was executed by Exxon to Jefferson County for approximately 5,041 acres of underground undeveloped coal reserves located in Jefferson County. Jefferson County filed an application for property tax exemption to the county board of review and stated it was holding this property for future development. The Department denied Jefferson County's application, and Jefferson County filed for a formal hearing. Jefferson County's formal hearing was held the same day as Hamilton County's formal hearing, and essentially the same evidence was presented by Jefferson County as in the Hamilton County hearing. The administrative law judge's findings in this hearing paralleled those

in the Hamilton County case. The Department formally denied Jefferson County's property tax exemption, and Jefferson County filed for administrative review of this decision in the circuit court. On August 10, 1994, the circuit court entered an order reversing the Department's denial of Jefferson County's property tax exemption, finding that the decision was against the manifest weight of the evidence.

The Department appeals the Jefferson County circuit court order in cause number 93—MR—32. Subsequently, on motion to this court, the Hamilton County case and the Jefferson County case were consolidated on appeal, as the issues presented are the same in each case.

## II. ANALYSIS

■ Generally, if the facts are undisputed, whether property is exempt from taxation is a question of law. *City of Chicago v. Illinois Department of Revenue*, 147 Ill. 2d 484 (1992). A decision of exemption or taxation is determined by applying the appropriate legal standard. *City of Chicago*, 147 Ill. 2d 484. Here, the facts are not disputed, so our analysis is one of law.

■ The Department contends that the trial court erroneously applied the 1994 statute, section 15—60 of the Property Tax Code, instead of applying the statute which applied to the 1992 tax year, section 19.6 of the Revenue Act of 1939. In 1992, the Revenue Act of 1939 exempted from taxation:

"all property owned by a county *** that is being held for future expansion or development, except property that has been leased *or may be leased* by a county *** to lessees for use for other than public purposes." (Emphasis added.) 35 ILCS 205/19.6 (West 1992).

Subsequently, effective January 1, 1994, the Property Tax Code amended that section to read:

"All property belonging to any county *** used exclusively for the maintenance of the poor is exempt, as is all property owned by a taxing district that is being held for future expansion or development, except if leased by the taxing district to lessees for use for other than public purposes." 35 ILCS 200/15—60 (West 1994).

In comparing the two statutes, the most notable difference is that the 1994 statute removed the phrase "or may be leased." It is around the removal of this phrase that this case hinges. Thus, our consideration is one of statutory construction.

The Department argues that the amendment to section 19.6 was a material, substantive change, giving rise to the presumption that the amendment was intended to change the law as it theretofore

existed. *Carbondale Liquor Control Comm'n v. Illinois Liquor Control Comm'n*, 227 Ill. App. 3d 71 (1992), *appeal after remand*, 245 Ill. App. 3d 973 (1993). It also argues that amendments to a statute are to be construed as prospective rather than retroactive; however, this presumption is rebuttable by express language to the contrary or by necessary implication. *People v. Fiorini*, 143 Ill. 2d 318 (1991). The Department contends that since there is no express language to the contrary in the amendment at issue herein, and since there is no retroactivity required by necessary implication, the amendment to section 19.6 must be considered only prospectively rather than retroactively.

The plaintiffs argue that the amendment of section 19.6 was not a substantive change but was merely done to clarify existing law. Where a law is amended to clarify existing law, it is appropriate to apply an amended statute retroactively. *Royal Imperial Group, Inc. v. Joseph Blumberg & Associates, Inc.*, 240 Ill. App. 3d 360 (1992). Further, plaintiffs contend that the preamble to Public Act 88—455, which enacted the Property Tax Code, indicates that the legislature did not intend to make substantive changes in the law but only intended to update obsolete language, to eliminate inoperative provisions due to change in the structure of units of local government, and to incorporate uniform terminology so that there would be constancy of understanding and interpretation of these laws.

In construing a statute, the appropriate place to begin is with the language of the statute. *State Farm Fire & Casualty Co. v. Yapejian*, 152 Ill. 2d 533 (1992). Where a statute is ambiguous, courts are not controlled by the literal meaning of the language of the statute but must consider and give primary effect to the spirit, intent, and purpose of the statute. *Willis v. Ohio Casualty Co.*, 101 Ill. App. 3d 1099 (1981). If there can be more than one construction of a statute, the construction which makes the statute both useful and logical must be selected. *Willis*, 101 Ill. App. 3d 1099. Where the provision of a statute is ambiguous, the legislative intent and purpose can be considered by reviewing a subsequent amendment of the statute. *Willis*, 101 Ill. App. 3d 1099. Additionally, as plaintiffs noted, the preamble to a public act can be useful in determining the scope of the act. *Geri's West, Inc. v. Ferrall*, 153 Ill. App. 3d 579 (1987). In the case *sub judice*, we find that the applicable 1992 statute provision "or may be leased" is an ambiguous, unclear provision; therefore, the trial courts correctly applied the 1994 amendment to the statute retroactively.

Here, the phrase "or may be leased" provides no guidance in construing section 19.6, and it provides much room for speculation in

applying that provision. As plaintiffs correctly note, any property held by a taxing district that could possibly be leased for a nonpublic purpose in the future effectively negates the tax exemption. No entity can foresee what use property may be put to, and to require a taxing district to prove that it will never lease the property for a nonpublic use in order to receive tax-exempt status for property held for future development places too heavy of a burden upon the taxing districts. It would seem, based upon the amendment to the statute, that the legislature wanted only the current use of property held for future development to be determinative of whether the taxing district property should be tax exempt. Here, the Department did not base the denial of tax exemption on current use but only based its decision on a speculative use to which the property may or may not be put in the future.

The preamble of the Property Tax Code, Public Act 88—455, further buttresses our reasoning. In the preamble it was stated:

"The Illinois General Assembly seeks to achieve these goals by consolidating the many tax laws of Illinois into a Property Tax Code, *without making any substantive changes*, in the meaning, effect *or application* of those laws." (Emphasis added.) Pub. Act 88—455, eff. January 1, 1994.

From this statement, it is clear that the legislature did not intend to invoke any major change from the prior laws with the enactment of the new. We were unable in our research to uncover any cases where tax exemptions were denied based on a future speculative use rather than on the current use of the property. Thus, applying the 1994 amendment does not appear to conflict with any prior application of the 1992 law. Because of the lack of case law to support the Department's position, and because the changes in the 1994 amendment were not to be considered substantive, as the Department argues, the 1994 amendment can be applied retroactively.

In addition to the foregoing, a recent supreme court case has held that the statute in effect at the time of appeal is the applicable statute, unless to apply the statute retroactively would violate a vested right. *First of America Trust Co. v. Armstead*, 171 Ill. 2d 282 (1996). This recent pronouncement by the supreme court effectively settles the retroactivity question regarding an amended statute. Here, the amended statute was in effect at the time of appeal, as well as at the time of the administrative review before the respective trial courts. There are no vested rights that would be violated if the amended statute were applied. Thus, the trial courts correctly applied the amended statute.

The next issue raised by the Department is that the trial courts'

reversals of its decisions as against the manifest weight of the evidence were erroneous. The Department presents two arguments under this heading: (1) that the plaintiffs failed to prove that they were entitled to the tax exemptions, and (2) that the Department did not apply section 19.6 of the Revenue Act of 1939 inequitably, invoking a violation of the 1970 Illinois Constitution.

In this case, the statute provides that all property of the county is tax exempt if it owns the property, if the property is being held for future expansion or development, and if it is not currently leased for a nonpublic purpose. 35 ILCS 205/19.6 (West 1992); 35 ILCS 200/15—60 (West 1994). The Department contends that plaintiffs did not prove that the coal reserves were being held for future development, under the plain and ordinary definition of the term "development," and since the property could only be leased for a nonpublic purpose, *i.e.*, to a private coal company for profit, the court's decision was erroneous.

■ We first consider the statutory construction of the term "development." In construing a statute, a court should look to the intention of the legislature, and to do so, a court must first look to the language of the statute. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76 (1992). When reviewing the statute, the language must be given its plain and ordinary meaning. *Williams v. Illinois State Scholarship Comm'n*, 139 Ill. 2d 24 (1990). The Department contends that plaintiffs failed to prove that they were entitled to the tax exemption, as the counties did not meet the criteria that they were holding the coal reserves for "future development." The Department argues that the term "development," while not defined in the statute, given its plain and ordinary meaning, means that property must be improved or that some type of structure must be built upon it. While we agree with the legal principles enunciated by the Department, we find the Department's definition of the word "development" too restrictive.

In Webster's Third New International Dictionary, the term "development" is given numerous meanings, among which are "the act, process, or result of developing; *** work done in developing a mine." Webster's Third New International Dictionary 618 (1986). Under the word "develop," the following definition is also included: "to make actually available or usable [as in natural resources]; *** to prepare *** for the extraction of ore (as by driving mine workings and passageways and providing power, ventilation, and other equipment)." Webster's Third New International Dictionary 618 (1986). Under these definitions, we find that the counties were holding the coal reserves for future development, giving the term its plain and ordinary meaning.

Further, we find that the Department's argument, that the coal reserves could only be leased for a nonpublic purpose and, thus, the counties did not prove their entitlement to the tax exemption, is without merit. There are two reasons for our determination. First, to apply the statute as the Department insists would be to consider a future nonpublic use, which is not required to be shown under the statute. The statute only requires the applicant show that the property is not being used currently for a nonpublic purpose. Our reasoning on this issue conforms to the supreme court's reasoning in *Harrisburg-Raleigh Airport Authority v. Department of Revenue*, 126 Ill. 2d 326 (1989). In that case, the supreme court stated that if the property was not being currently used but was only being held for future expansion, then the property would have been tax exempt. However, the property in *Harrisburg-Raleigh Airport Authority* was being used, and the use was not primarily for public purposes. *Harrisburg-Raleigh Airport Authority*, 126 Ill. 2d 326. That is the situation in the instant case—the property is not being used but is only being held for future development. Second, the Department's decision is based upon speculation. We decline to hold that the coal reserves held by the counties could never be leased other than for nonpublic purposes. This is especially true when there is a statute which allows a county to establish and acquire property to operate a coal processing plant and system or to acquire property necessary to process the coal. See 55 ILCS 100/0.01 *et seq.* (West 1994) (the County Coal Processing Act). Therefore, we find that the trial courts' orders finding that the Department's findings and rulings were against the manifest weight of the evidence were not erroneous.

The Department also contends that it did not inequitably apply the statute, creating a violation of the Illinois Constitution, when it granted a tax exemption to the City of Mt. Vernon for small, random lots obtained by the city, which were being held for "future development," but declined the counties the same tax relief under the same statute for the same purpose, *i.e.*, future development. Because we have already affirmed that the trial courts' rulings were correct in finding that the Department's decisions were against the manifest weight of the evidence, we decline to consider this issue as the trial courts did not base their decisions on this evidence or rule on this issue below, and it is unnecessary for us to do so.

### III. CONCLUSION
For the foregoing reasons, the judgments of the circuit courts of

648

Hamilton County and Jefferson County are affirmed.

No. 93—MR—10, Affirmed.
No. 93—MR—32, Affirmed.

WELCH and GOLDENHERSH, JJ., concur.