THE ST. CLAIR COUNTY BOARD, Plaintiff-Appellee, v. THE VILLAGE OF NATIONAL CITY, Defendant-Appellant.

Fifth District    No. 5—97—0100

Opinion filed October 3, 1997.

David M. Fahrenkamp, of Edwardsville, for appellant.

David H. Bone, of State's Attorney's Office, and Robert E. Becker, of Becker, Paulson & Hoerner, P.C., both of Belleville, for appellees.

JUSTICE RARICK delivered the opinion of the court:

On October 31, 1996, the St. Clair County Board (the Board) filed a petition for dissolution in the circuit court of St. Clair County, seeking an order to dissolve the Village of National City (National City) pursuant to section 7—6—7 of the Illinois Municipal Code (65 ILCS 5/7—6—7 (West 1994)). The circuit court granted the petition on February 21, 1997. National City appeals, arguing that the circuit court's decision was based on a misinterpretation of the statute. We affirm.

The record reveals that on April 30, 1996, the Board adopted a resolution calling for a special census of National City in order to dissolve it. Pursuant to this resolution, the Board requested the United

States Bureau of the Census to undertake a special census of National City. The census was conducted on August 13 and 14, 1996, and found that there were zero inhabitants in National City. On November 18, 1996, the court permitted Robert Marshall, Lorie Marshall, Harold Smith, and Walter Dickinson to intervene on their own behalf and on behalf of their families and all other persons, known or unknown, who intended to return to or move to the Village of National City. Both the intervenors and National City filed motions to dismiss. On February 21, 1997, the circuit court denied the motions to dismiss and granted the petition for dissolution.

■ The sole issue on appeal is whether the circuit court erred in construing section 7—6—7 of the Illinois Municipal Code. Section 7—6—7 provides:

> "Upon application by the county board of any county to the circuit court, and after a hearing upon such notice as may be directed by such court, any municipality which has less than 50 inhabitants according to the last preceding Federal census may be ordered by the court to dissolve. After service of such order upon the corporate authorities of the municipality acting at that time they shall proceed to close up the business affairs of the municipality as expeditiously as possible and in the same manner as is provided by Sections 7—6—4, 7—6—5 and 7—6—6 in the case of voluntary dissolution. The court may enforce compliance with its order by proceedings for contempt. If ever there is in existence any municipality in which the Bureau of the Census did not determine the population when the last preceding decennial census was taken, the county board of the county in which such municipality is located may, at county expense, arrange with the Bureau of the Census to take a special census of such municipality." 65 ILCS 5/7—6—7 (West 1994).

National City maintains that a county may seek a special census for purposes of dissolving a municipality only where there has been no preceding decennial Federal census. In other words, a county board cannot use a special census as the basis for the involuntary dissolution of a municipality where the municipality's population was determined at the last preceding decennial census. Because the 1990 Federal census found the city to have a population of 57, National City contends, the Board could not rely on a special census to seek the dissolution of the city and the circuit court erred in granting the petition for dissolution. We do not agree.

■ The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. *In re Application for Judgment & Sale by the County Treasurer & ex officio County Collector of St. Clair County*, 276 Ill. App. 3d 1084, 659 N.E.2d 457 (1995); *Tucker*

*v. Illinois Power Co.*, 232 Ill. App. 3d 15, 597 N.E.2d 220 (1992). Legislative intent is best determined from the language of the statute (*County of Hamilton v. Department of Revenue*, 279 Ill. App. 3d 639, 665 N.E.2d 567 (1996)), and such language will be given its plain and ordinary meaning. *In re Incorporation of the Village of Godfrey*, 243 Ill. App. 3d 915, 612 N.E.2d 870 (1993). Where the language of a statute is not ambiguous, it will be enforced as enacted without resort to other aids. *Scott v. Archer-Daniels-Midland Co.*, 194 Ill. App. 3d 510, 551 N.E.2d 776 (1990). Reviewing the language of section 7—6—7, we find the statute to be clear and unambiguous.

■ The first sentence of section 7—6—7 provides that a county board may petition the circuit court for an order to dissolve any municipality which has less than 50 inhabitants according to the *last preceding Federal census*. The statute does not limit this to the last preceding *decennial* Federal census. The legislature's use of the adjective "decennial" in the fourth sentence, but the exclusion of it in the first sentence, clearly demonstrates that not only was the legislature aware that it could use the adjective "decennial" as a modifier but it purposely chose to omit it from the first sentence.

Even if we found the language of the statute to be ambiguous, we would nevertheless conclude that the circuit court's construction reflected the intent of the legislature. The underlying purpose of section 7—6—7 is that municipalities with small populations "would be beset with difficulties of providing fire and police protection as well as being subject to domination by a single individual or group, who could use the power of a municipality for private rather than public goals." *Supervisors of the County of Boone v. Village of Rainbow Gardens*, 14 Ill. 2d 504, 512-13, 153 N.E.2d 16, 21 (1958). Providing a county with the authority to seek a court order to dissolve such municipalities provides a mechanism to redress such problems. Requiring a county to wait until the next decennial census to seek the dissolution of a municipality whose population has fallen below 50 would hinder rather than serve the purpose of the statute. Further, there is no logic in allowing the use of a special census only in situations where there has been no previous decennial census. A county would be able to act expeditiously where there had been no previous decennial census, but where there had been, the county would be forced to wait until the next decennial census. This is contrary both to the purpose of the statute and to common sense.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

KUEHN, P.J., and HOPKINS, J., concur.