CHARLES WILLIS, d/b/a Lazarus Willis and Associates, Plaintiff-Appellant, *v.* OHIO CASUALTY COMPANY *et al.*, Defendants-Appellees.

First District (5th Division)    No. 80-2522

Opinion filed November 13, 1981.

Lev & Sneckenberg, of Chicago (William J. Sneckenberg, of counsel), for appellant.

Hollobow & Taslitz, of Chicago (Barry Kreisler, *pro se*, of counsel), for appellee Barry Kreisler.

Mr. JUSTICE MEJDA delivered the opinion of the court:

This action was commenced by plaintiff against defendants Barry Kreisler (Kreisler) and Ohio Casualty Company (Ohio Casualty) to recover damages for breach of contract. The circuit court granted Kreisler's motion to dismiss counts III and IV of plaintiff's complaint, thereby removing Kreisler from the action. The court also denied plaintiff's subsequent motion for leave to file an additional count in *quantum meruit* against Kreisler. In this appeal, plaintiff contends that the trial court abused its discretion in; (1) dismissing counts III and IV of plaintiff's complaint, and (2) denying plaintiff leave to file an additional count based on *quantum meruit*.

Plaintiff's four-count complaint was filed on May 26, 1978. Counts I and II named Ohio Casualty solely as defendant. Count III alleged breach of contract against Kreisler; and count IV alleged conspiracy against Ohio Casualty and Kreisler. By stipulation, all counts against Ohio Casualty were voluntarily dismissed by the plaintiff and are not presented for consideration in this appeal.

Counts III and IV of plaintiff's complaint contain the following allegations:

Count III: In January 1977, plaintiff, a public fire claims adjuster, was employed by Kreisler to adjust a fire loss claim. The fire occurred at Kreisler's property on January 15, 1977. This employment agreement was

memorialized in a writing and signed by defendant and plaintiff. Pursuant to this agreement, plaintiff agreed to assist in the adjustment of Kreisler's claim for losses occasioned by the damage by fire to Kreisler's property. For plaintiff's services Kreisler agreed to assign to plaintiff an amount of 10 percent of the adjusted or settled fire loss claim recovered. Plaintiff performed all conditions precedent to the contract. At some time after June 1977, Kreisler received approximately $105,000 in settlement of his claim for loss from Ohio Casualty. Kreisler thereafter breached his contractual duty to the plaintiff by refusing to pay the 10 percent adjuster's fee. As a result of this breach, plaintiff was damaged in the amount of about $10,500.

Count IV: Plaintiff alleges that Kreisler and Ohio Casualty conspired to deprive him of fees due under the employment contract by agreeing to omit plaintiff's name from the settlement draft; that the custom in the insurance industry was to place the public adjuster's name on the draft in order to insure that he would be paid for his services; and that such omission was an overt act designed by defendants to deprive him of payment under the contract. Plaintiff seeks punitive damages in the amount of $105,000, the total amount of the settlement draft.

It is undisputed that on August 14, 1978, the subject complaint was served upon Kreisler at his business address. The following day, August 15, Kreisler sent a letter by registered mail to plaintiff expressing his election to avoid their agreement pursuant to the Illinois act relating to certain agreements in connection with fire claims. Ill. Rev. Stat. 1977, ch. 29, par. 81.

On December 11, 1979, the trial court granted Kreisler's motion to dismiss counts III and IV. Thereafter, on January 2, 1980, plaintiff filed a motion for leave to file an amended count III alleging unjust enrichment against Kreisler. Then, on January 9, 1980, upon plaintiff's motion, the trial court ordered that the previously styled "amended Count III" was to be "denoted and referred to as Count V." Then, on March 25, 1980, plaintiff filed a motion for leave to file an "amended Count V" seeking a *quantum meruit* recovery against Kreisler.

Amended count V sets forth the following pertinent allegations: That subsequent to January 15, 1977, plaintiff performed service of adjusting the losses due to fire at Kreisler's property; that these services were rendered pursuant to the request of Kreisler made on January 15, 1977; and that these services consisted of the evaluation and determination of the scope and extent of the fire damages sustained by Kreisler and negotiating and presenting Kreisler's claim to Ohio Casualty. Plaintiff claims that the reasonable value of his services is $10,500, which Kreisler has refused to pay.

On August 21, 1980, the trial court denied plaintiff's motion to file his

amended count V. On September 2, 1980, and September 19, 1980, the court denied plaintiff's respective motions to vacate the order of August 21, 1980. The record of the proceedings of September 19 indicates that the trial court denied leave to file the amended pleading as an exercise of discretion because the effect of the *quantum meruit* count was to circumvent the intent of the legislature set forth under the fire claims act. Ill. Rev. Stat. 1977, ch. 29, par. 81.

OPINION

Plaintiff challenges the trial court's dismissal of counts III and IV of his complaint against Kreisler. Defendant contends initially that plaintiff waived any right to seek review of the dismissal order when he elected to file various amended complaints based upon different theories of law, instead of appealing the dismissal order. (*Erickson v. Walsh* (1973), 11 Ill. App. 3d 99, 296 N.E.2d 36.) Defendant concludes, therefore, that the dismissal order should not be considered as part of the record on appeal. We disagree.

While we recognize the general rule that a plaintiff waives his objection to an order sustaining a motion to strike when he abandons his complaint and files an amended complaint (see generally *Fishel v. Givens* (1977), 47 Ill. App. 3d 512, 362 N.E.2d 97; *Field Surgical Associates, Ltd. v. Shadab* (1978), 59 Ill. App. 3d 991, 376 N.E.2d 660), we do not believe this rule precludes review of the dismissal order in the instant case.

■■ First, it is not the law in this State that a party abandons his original plea merely by filing an additional count. (*Merker v. Belleville Distillery Co.* (1905), 122 Ill. App. 326.) We do not find from the record in the instant case the plaintiff in substance sought to amend count III. On the contrary, the "Amended Count III" alleged a new and distinct theory of unjust enrichment and was essentially an additional count albeit its erroneous caption. Further, any confusion with respect to this court was cured by the trial court's subsequent order restyling and redesignating the amended count as new "Count V." Under these circumstances we find that the plaintiff in substance and effect merely filed an additional count and did not abandon stricken counts III or IV.

Moreover, we cannot apply principles of abandonment and waiver for plaintiff's failure to appeal the order striking counts III and IV because this order was not a final and appealable order.

■■ Under Supreme Court Rule 304(a), if multiple parties are involved in an action, an appeal may be taken from a final judgment as to one but fewer than all of the parties only if the trial court has made an express written finding that there is no just reason to delay enforcement or appeal. (Ill. Rev. Stat. 1979, ch. 110A, par. 304(a).) At the time plaintiff's counts III and IV were stricken by the trial court, defendant Ohio Casualty was still

a party to the action. The subject order did not dispose of the remaining counts pending against this defendant, nor did the order contain an express finding that there was no just reason for plaintiff to delay appeal. Such being the case, the dismissal order was not a final and appealable order. Thus, for the above reasons we find that plaintiff did not waive his right to seek a review of the trial court's order striking counts III and IV of plaintiff's complaint.

We now turn to plaintiff's contention that the trial court improperly dismissed counts III and IV of his complaint. The trial court dismissed these counts which were grounded upon an alleged contract as insufficient in law. Specifically, the trial court found that the alleged contract was unenforceable due to plaintiff's "noncompliance" with "An Act relating to certain agreements in connection with fire insurance claims" (Ill. Rev. Stat. 1977, ch. 29, par. 81).

This act was enacted by the General Assembly in 1972 and established the right of avoidance of agreements for representation in fire damage claims by represented parties if such agreements are made within five days of a fire. Essentially the act provides that the represented party has the right to avoid such agreements, at his election, within 10 days of the making of the agreement, by notifying the representing party of such intent by certified or registered mail. This act further requires that:

> "The person undertaking such representation of the claimant by such an agreement must, before or at the time of the agreement, furnish in writing the party with whom the agreement is made a copy of the agreement and the address or phone number at which the notice may be given, and obtain written acknowledgment of receipt of notice from the party represented. If he fails to do so, the 10 day period provided for in this Act does not commence to run until such agreement and address or phone number is furnished." Ill. Rev. Stat. 1977, ch. 29, par. 81.

In distilling the record on appeal, we believe that the trial court's dismissal of the plaintiff's contract action was implicitly a determination that defendant timely avoided the contract for fire claims representation due to plaintiff's "noncompliance" with the statute, in essence, a determination that plaintiff failed to comply with one or more of the several affirmative duties required of fire claims adjusters under this act.

Under the statute, the affirmative duties are threefold. First, the claims adjuster must provide the represented party, before or at the time of the agreement, a written copy of the agreement. Second, the claims adjuster must furnish in writing to the represented party, before or at the time of the agreement, the address and phone number at which notice may be sent. The third requirement is that the adjuster must "obtain

written acknowledgment of receipt of notice from the party represented." Ill. Rev. Stat. 1977, ch. 29, par. 81.

Plaintiff contends that he complied with these three requirements when he provided to defendant a written copy of the contract which contained his business address and phone number. Plaintiff urges that defendant's signature upon the contract operated as written acknowledgment of receipt of notice from the represented party. It is plaintiff's position that under the statute "notice" refers to notice to the represented party of (1) the time of the agreement, and (2) the business address and phone number where defendant could serve plaintiff with a letter stating his election to avoid the agreement. The defendant poses a different interpretation of this provision. It is defendant's contention that the statute requires that the claims adjuster (1) notify the represented party of his right to avoid such contracts, and (2) obtain written acknowledgment of receipt of such notice from the party represented.

■■ We are convinced that the statutory requirement of "notice" as it is used in this provision is ambiguous and therefore must be construed by this court. In construing an ambiguous statutory provision, courts are not controlled by the literal meaning of the relevant language but must consider and give primary effect to the spirit, intent and purpose of the enactment. (*People v. Kezerian* (1978), 63 Ill. App. 3d 610, 379 N.E.2d 1246.) In ascertaining legislative intent the court may look to the reason and necessity for the law, the evil to be remedied and the purpose to be obtained. (*People ex rel. Moss v. Pate* (1964), 30 Ill. 2d 271, 195 N.E.2d 641.) Where two or more constructions may be placed upon a statute, the court must select that construction which makes the statute both useful and logical. ((*Yellow Equipment & Terminals, Inc. v. Lewis* (1976), 35 Ill. App. 3d 875, 342 N.E.2d 426; *People ex rel. Callahan v. Marshall Field & Co.* (1980), 83 Ill. App. 3d 811, 404 N.E.2d 368.) In order to determine the legislative intent and purpose in the case of an ambiguous provision, the court may consider a subsequent amendment to the statute being construed. *O'Connor v. A & P Enterprises* (1980), 81 Ill. 2d 260, 408 N.E.2d 204; *People v. Foy* (1978), 61 Ill. App. 3d 137, 377 N.E.2d 1282.

In 1979, the General Assembly adopted Public Act 81-1126, section 1, which amended the fire claims representation statute, changing the language of the provision at issue. The above-quoted provision now reads: "The person undertaking the representation of the claimant by such an agreement must, at the time of the agreement, furnish the party with whom the agreement is made a copy of the agreement and the address to which the notice may be sent *and a copy of this Act*, and obtain written acknowledgment of receipt of *such* from the party represented." (Emphasis added.) (Ill. Rev. Stat., 1980 Supp., ch. 29, par. 81.) The amended text became effective July 1, 1980. There is now no question but that as of July

1, 1980, the fire claims adjuster must provide the represented party with a copy of the act.

■■ ■ While an amendment of an unambiguous statute indicates a purpose to change the law, no such purpose is indicated by the mere fact of an amendment of an ambiguous provision. (*O'Connor v. A & P Enterprises* (1980), 81 Ill. 2d 260, 408 N.E.2d 204.) We feel that the purpose of this amendment was to clarify the ambiguity which existed as to what notice was to be given to represented parties under the statute.

> "[W]hile courts are and should be cautious about adding words, as such, to a statute generally, they will not hesitate to read into the sense of some section or provision a qualifying or expanding expression plainly implied by the general context of the act, which has been palpably omitted and which is necessary to prevent the legislative purpose from failing in one of its material aspects." (*Continental Illinois National Bank & Trust Co. v. Illinois State Toll Highway Com.* (1969), 42 Ill. 2d 385, 402, 251 N.E.2d 253, 263, quoting *People ex rel. Barrett v. Anderson*, 398 Ill. 480, 485, 76 N.E.2d 773, 776.)

Here, we are convinced that the ambiguity in the 1975 version of the statute was through oversight by the legislature. In accord with the manifested expression of the legislative intent as evidenced in the amendment, we conclude that the term "notice" as discussed refers to notice of the right to avoid pursuant to the act. In our opinion the purpose of the statute was to protect a homeowner or property owner, having recently experienced the trauma of a fire, from entering into imprudent contracts with claims adjusters while likely emotionally shaken and distraught. We feel that to effect this purpose the legislature intended that the represented party must be given notice of his right to avoid by the representing party. This construction, we believe, renders the statute both logical and useful in view of the potential unfair bargaining advantage of the claims adjuster over such fire loss victims, and considering the manifest legislative intent to eradicate this disparity.

Subsection 48(1)(i) of the Illinois Civil Practice Act provides for the involuntary dismissal of an action or for other appropriate relief based on the assertion of affirmative matter which does not appear on the face of the complaint. (Ill. Rev. Stat. 1979, ch. 110, par. 48(1)(i).) This subsection is limited by the basic rule that a motion to dismiss admits all well-pleaded facts but it does not admit conclusions of law nor conclusions of fact unsupported by allegations of specific fact upon which such conclusions rest. (*Village of Niles v. City of Chicago* (1980), 82 Ill. App. 3d 60, 401 N.E.2d 1235.) Under section 48 if the grounds for dismissal do not appear on the face of the pleadings attacked, the motion must be supported by affidavit. (Ill. Rev. Stat. 1979, ch. 110, par. 48(1).) The

statute provides that if a material and genuine disputed question of fact is raised, the court may decide the motion on the affidavits and evidence offered by the parties; or, alternatively, the court may deny the motion without prejudice to the right to raise the subject matter of the motion by answer. Ill. Rev. Stat. 1979, ch. 110, par. 48(3); *Mastroianni v. Curtis* (1979), 78 Ill. App. 3d 97, 397 N.E.2d 56.

■■ In the case before us, no evidence was taken and the case was decided upon the pleadings and affidavits of the respective parties. The plaintiff has not demonstrated, by way of pleadings or affidavit, that he obtained written acknowledgment of receipt of the notice from the defendant as required by the fire claims representation statute. (Ill. Rev. Stat. 1977, ch. 29, par. 81.) This being the case, we feel that the defendant effectively avoided the contract by its written notification of August 15, 1980. Therefore, the defendants' motion to dismiss counts III and IV, predicated on the written contract, was properly granted.

Plaintiff next asserts that it was an abuse of judicial discretion for the trial court to deny his motion for leave to file an amended pleading in *quantum meruit.*

Generally, under the Civil Practice Act, the power to allow amendments should be freely exercised so that litigants may freely present their causes of action; the most important question is whether amendment will be in furtherance of justice. (Ill. Rev. Stat. 1979, ch. 110, par. 46(3); *Wallace v. Weinrich* (1980), 87 Ill. App. 3d 868, 409 N.E.2d 336.) Amendment of defective pleadings should be permitted unless it is clear that the defect is not curable thereby. (*Scala/O'Brien Porsche Audi, Inc. v. Volkswagen of America, Inc.* (1980), 87 Ill. App. 3d 757, 410 N.E.2d 205.) The decision to allow amended pleadings is a matter of the sound discretion of the trial court and, absent manifest abuse of such discretion, will not be disturbed by the appellate court. *Whildin v. Kovacs* (1980), 82 Ill. App. 3d 1015, 403 N.E.2d 694.

The record in the instant case reveals that the trial court denied the plaintiff's motion for leave to file an amended count V as a matter of judicial discretion essentially because the court found that the effect of the amended *quantum meruit* count was to circumvent the intent of the legislature set forth under the fire claims act. (Ill. Rev. Stat. 1977, ch. 29, par. 81.) Plaintiff maintains that even if the contract for representation is void and unenforceable as a matter of law, the interests of justice would require that a performing party be entitled to a *quantum meruit* recovery for services rendered. Plaintiff urges that the appellate court should be controlled by the holding in *Rhoades v. Norfolk & Western Ry. Co.* (1979), 78 Ill. 2d 217, 399 N.E.2d 969, which permitted an attorney discharged at will a *quantum meruit* recovery from his former client where the contingent fee contracted for was unenforceable at law.

In *Rhoades*, our supreme court held essentially that where the attorney was not guilty of solicitation, but had been discharged without cause by his former client, in the interest of justice, such attorney should be entitled to a *quantum meruit* recovery of reasonable fees for services rendered before discharge. It is plaintiff's position that here, the defendant's election to avoid his agreement with the claims adjuster is closely aligned to the *Rhoades* situation in which the client exercised his implied-in-law right to discharge his attorney at will.

Defendant contends that Illinois courts should be guided by the city court of Rochester, New York, ruling in *Parsky Funeral Home, Inc. v. Shapiro* (1975), 83 Misc. 2d 566, 372 N.Y.S.2d 288. This decision denied a *quantum meruit* recovery to a funeral establishment for noncompliance with a statute requiring such establishments to furnish certain written statements to customers disclosing pricing information. Under the statute failure to furnish the required statement was punishable as a misdemeanor. The court would not enforce the contract made in violation of that statute even though one party had received the benefits of the agreement, nor would it allow a recovery under an implied contract or *quantum meruit* theory.

We are not convinced that the *Parsky* rule is, or should be, controlling in this case. We read this case to stand for the general proposition that contracts made in violation of the statute are not enforceable particularly where the statute was enacted for the protection of the public and where a violation thereof constitutes a crime. We believe that the *Parsky* court was motivated in its decision by its conclusion that a *quantum meruit* recovery by a violation of the particular statute would in effect serve to reduce or completely offset the financial effects of punitive fines imposed by the subject statute.

Moreover, the *Parsky* court analyzed the enforceability of a contract made in clear violation of a misdemeanor statute. (See N.Y. Public Health Law (McKinney 1977).) Failure to disclose pricing information, under this statute, constituted a punishable crime. In the instant case the statute is merely remedial in nature, and its operation could be waived by the represented party either at his election or by his failure to timely notify the claims adjuster of his election to avoid the contract. Such being the case, we do not find the *Parsky* rule suited to the Illinois statute considered here.

On the contrary we find the statute governing fire claims adjusters to be more in consonance with the Illinois consumer protection statutes as reflected, for example, in section 2B of the Consumer Fraud and Deceptive Business Practices Act. (Ill. Rev. Stat. 1979, ch. 121½, par. 262B.) This statute permits a consumer to avoid certain sales contracts within three days after entering into the contract of sale. Under this act,

the buyer must return the merchandise, in its original condition, to the seller, in order to rescind. If return of the merchandise as required under the act is impractical or inequitable, the buyer must tender its reasonable value. *Hurlbert v. Cottier* (1978), 56 Ill. App. 3d 893, 372 N.E.2d 734.

Although we recognize that under the instant statute there is no such requirement that the represented party tender reasonable value of the adjuster's services as a condition precedent to his right to avoid, we simply feel that section 2B evidences the general State policy with respect to the propriety of restitution in consumer transactions. In *Rhoades*, our supreme court observed that the client was a "consumer" of legal services, protected by the State policy protecting consumers. Likewise, we believe that the fire loss victim is a consumer in the same sense. The *Rhoades* case concluded that in the interest of justice, the client-consumer would be liable for the reasonable value of services rendered.

■■ We find that the reasoning in *Rhoades* is applicable in this case. We do not believe that a *quantum meruit* recovery in this case would seriously impair the protection intended to be afforded by the statute to the class of consumers in the position of the defendant. We hold, in the interest of justice, and where, as in the instant case, there has been no allegation of fraud, deceit or unconscionable inducement, the plaintiff is entitled to assert a *quantum meruit* claim based on the reasonable value of services rendered at the request of the defendant. Accordingly, the order of the trial court dismissing counts III and IV of plaintiff's complaint is affirmed; the order denying plaintiff leave to file an amended count V in *quantum meruit* is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed and remanded in part.

SULLIVAN, P. J., and WILSON, J., concur.