FIRST DIVISION

December 27, 2004

No. 1-04-0633

GENERAL MOTORS ACCEPTANCE CORPORATION, ) 

) 

Plaintiff, ) Appeal from the

) Circuit Court of

v. ) Cook County.

) 

ROBERT JOHNSON and PAULINE JOHNSON, )

)

Defendants )

_______________________________ ) No. 02 M1 164531

)

(Pauline Johnson, )

)

Third-Party Plaintiff Appellant;
 ) 

)

) 

Gateway Chevrolet, Geo, Oldsmobile, Inc., ) 
Honorable

) Leon Wool,

Third-Party Defendant-Appellee). ) Judge Presiding
.

JUSTICE GORDON delivered the opinion of the court:

This cause of action arises from an order of the circuit court granting third-party defendant's, Gateway Chevrolet, Inc. (Gateway), motion to stay litigation pending arbitration based on an arbitration agreement signed by Gateway and third-party plaintiff, Pauline Johnson (Pauline).  Pauline contends that arbitration could not be ordered because her contract with Gateway, along with the accompanying arbitration agreement, was void due to Gateway's violation of section 2B the Consumer Fraud and Deceptive Business Practices Act (hereinafter referred to as the Consumer Fraud Act or Act) (815 ILCS 505/2B (West 2002)).  She further alleges that the arbitration agreement was invalid due to a lack of consideration and that Gateway improperly failed to request arbitration in the first instance.  For the following reasons, we affirm.

BACKGROUND

On October 17, 2001, Pauline and her husband, Robert Johnson, purchased a 2002 Chevrolet Cavalier from Gateway.  According to an affidavit signed by Pauline, a Gateway employee went to her home with her husband and persuaded her to sign a retail installment contract for the purchase of the vehicle.  Pauline and Robert also signed an arbitration agreement, which provided in pertinent part:

"
IMPORTANT ARBITRATION DISCLOSURES

The following Arbitration Clause significantly affects your rights in any dispute with Us.  Please read these disclosures and the Arbitration Clause carefully before you sign this Agreement.

1.  Either You or Us may unilaterally choose to have any dispute between you and Us decided by arbitration and not in court.

2.  If a dispute is arbitrated, both You and Us will give up the right to a trial by the court or a trial by jury.

3.  If a dispute is arbitrated, You will give up Your right to participate as a class representative and/or a class member on any class claim you may have against us.

4.  In arbitration, the information which can be obtained through discovery by you from Us and/or by Us from You is generally more limited than the information which can be obtained through discovery in a lawsuit.

5.  Other rights that [Y]ou and/or Us would have had in court may not be available in arbitration.

6.  Even if [the] dispute is arbitrated, Your vehicle may still be repossessed if [Y]ou do not honor Your lease and both [Y[ou and Us may seek provisional remedies from court [
sic
].

Any claim or dispute whether in contract, tort, fraud, breach of warranty or otherwise (including the interpretation and scope of this clause and the arbitrarility [
sic
] of any issue). Between You and Us or our employees, agents, successors or assigns, which arise out of or relate to this Agreement or any resulting transaction or relationship (including any such relationship with any third parties who do not sign this Agreement) shall at Your or Our election (or the election of any such third party). Be resolved by a neutral binding arbitration and not by a court action [
sic
]."

The day after purchasing the vehicle, Robert attempted to return it to Gateway, but Gateway employees refused to take the vehicle back.  Pauline asserted that she also attempted to return the vehicle two days after signing the contract, but was told she could not do so.  The Johnsons thereafter defaulted on their finance payments and the vehicle was repossessed.  The assignee of the contract, plaintiff, General Motors Acceptance Corporation, filed a complaint against the Johnsons seeking damages for breach of contract.  Pauline then obtained leave from the court to file a third-party complaint against Gateway.  The third-party complaint alleged that Gateway failed to give Pauline notice of her right of rescission and refused to cancel the contract and accept return of the vehicle all in violation of section 2B of the Consumer Fraud Act.  815 ILCS 505/2B (West 2002).

On August 28, 2003, Gateway filed a motion to stay all trial court proceedings pending arbitration pursuant to the arbitration agreement.  Pauline opposed the motion, contending that it would be fundamentally unfair to allow Gateway to benefit from the arbitration agreement, which she would have rescinded along with the retail installment contract had Gateway not violated the Act.  A hearing on the motion was conducted on February 2, 2004.  The court found that the sole question before it was whether the arbitration agreement existed at all and whether the dispute fell within the terms of that agreement.  Answering both questions in the affirmative, the court granted Gateway's motion to stay the litigation pending arbitration.  

ANALYSIS

Pauline appeals the trial court order granting the stay, primarily contending that a contract dispute alleging the invalidity of the contract itself cannot be subject to an arbitration clause which was part of the allegedly invalid contract.  Therefore, the question of whether the contract was enforceable or "existed" must first be decided by a trial court and cannot be subject to arbitration.  Pauline also very briefly asserts that the arbitration clause was invalid because it was obtained without consideration and that Gateway never actually initiated a request for arbitration.  For the following reasons, we disagree and affirm the judgment of the circuit court.

Section 2B of the Consumer Fraud Act provides:

"§ 2B. Where a sale of merchandise involving $25 or more is made or contracted to be made whether under a single contract or under multiple contracts, to a consumer by a seller who is physically present at the consumer's residence, that consumer may avoid the contract or transaction by notifying the seller within 3 full business days following that day on which the contract was signed or the sale was made and by returning to the person, in its original condition, any merchandise delivered to the consumer under the contract or sale. At the time the transaction is made or the contract signed, the person shall furnish the consumer with a fully completed receipt or contract pertaining to the transaction, in substantially the same language as that principally used in the oral presentation to the consumer, containing a 'Notice of Cancellation' informing the consumer that he may cancel the transaction at any time within 3 days ***. 

* * *

*** The 3 day period provided for in this Section does not commence until the consumer is furnished a 'Notice of Cancellation', and the address at which such notice to the seller can be given. If those conditions are met, the seller must return to the consumer the full amount of any payment made or consideration given under the contract or for the merchandise."  815 ILCS 505/2B (West 2002).

Section 10a of the Act further authorizes private causes of action for deceptive business practices proscribed under the Act.  815 ILCS 505/10a (West 1992) (amendments to section 10a made under Public Act 87-1140 (eff. January 1, 1993) and Public Act 89-144 (eff. January 1, 1996) were declared unconstitutional in 
Allen v. Woodfield Chevrolet, Inc.
, 208 Ill. 2d 12, 33 (2003)).

Pauline appears to specifically set forth two contentions regarding the Act.  The first contention asserts that, because Pauline was never notified of her right to cancel the contract, that right is still available to her and her cancellation of the contract pursuant to that right would render the contract and accompanying arbitration agreement void.  Her second contention is that Gateway violated section 2B of the Act by failing to give her notice of her right to cancel the contract and the violation of the statute renders the contract and arbitration agreement void.  In either case, Pauline asserts that where a contract and/or arbitration agreement is void, the parties cannot be subject to its provisions.  Therefore, she argues, the trial court was required to first determine whether Gateway's contract was void, because if it was, the arbitration clause would be unenforceable and the court's order staying all litigation pending arbitration improper.  We disagree with both of Pauline's contentions.

In general support of both contentions, Pauline relies on 
Barter Exchange, Inc. of Chicago v. Barter Exchange, Inc.
, 238 Ill. App. 3d 187, 606 N.E.2d 186 (1992), in her appellate brief, and, at the trial court level, also cited the appellate court decision, 
Jensen v. Quik International
, 345 Ill. App. 3d 713, 801 N.E.2d 1124 (2003).  The courts in both of these cases concluded that the issue of whether the parties actually entered into a contract is not arbitrable because the issue of whether a contract existed is a question of law for a court to determine.  However, following the submission of the parties' briefs to this court, our supreme court reversed
 the appellate decision in 
Jensen
 and overruled 
Barter Exchange, Inc. of Chicago
 in 
Jensen v. Quik International
, No. 97704 (November 18, 2004), which must now gu
ide us in deciding this case.

In 
Jensen
, the plaintiff sought to rescind a franchise agreement with the defendant on the grounds that the agreement violated the Franchise Disclosure Act of 1987 (815 ILCS 705/5 (West 2002)) because the defendant franchisor was not registered with the Attorney General's office at the time of sale.  
Jensen
, slip op. at 1.  The defendant sought to stay any litigation on the agreement pending arbitration pursuant to an arbitration clause contained therein; however, the circuit court denied the motion.  
Jensen
, slip op. at 2.  The appellate court affirmed the denial, holding that because compliance with the Act was a condition precedent to an enforceable contract, the agreement and the arbitration clause were not binding because the contract did not exist if the Act had been violated.  
Jensen
, slip op. at 2.  Therefore, the question of whether the Act had been violated had to first be determined in a court of law prior to enforcement of the arbitration clause.  
Jensen
, slip op. at 2.  Our supreme court disagreed and reversed the trial and appellate courts.

In its decision, the supreme court concluded that registration, 
i.e.,
 compliance with the statute, was not, in fact, a condition precedent to an enforceable franchise agreement.  The Franchise Disclosure Act provides that in the case of a violation of the statute, the available remedies are rescission and damages; the Act does not provide that agreements entered into in violation of the Act are invalid and unenforceable, 
i.e.
, that they are void or never existed.  
Jensen
, slip op. at 6 ("[h]ad the legislature intended that a franchise agreement entered into in violation of sections 5 and 10 be unenforceable, it could have easily so provided").  
In this regard, the court noted that the remedy of rescission presumes that a valid contract exists.  
Jensen
, slip op. at 6.  Therefore, b
ecause an action to rescind does not challenge the existence of the contract, it can be presented to an arbitrator.  
Jensen
, slip op. at 5, citing 
Cusamano v. Norrell Health Care, Inc.
, 239 Ill. App. 3d 648, 607 N.E.2d 246 (1992).  The court further based its decision on the fact that the Act states a franchisee 
may
 sue for damages or 
may
 sue for rescission where a franchise is offered or sold in violation of the Act.  
Jensen
, slip op. at 6.  Therefore, rescission is an 
option
 and the franchisee may instead choose "to retain the benefit of his bargain with the franchisor notwithstanding the fact that the franchisor is not registered," and simply sue for damages or do nothing at all.  
Jensen
, slip op. at 7.  This observation likewise militated against a finding that a contract not in compliance with the Act is unenforceable or void because then the franchisee would not be entitled to make such an election.  
Jensen
, slip op. at 7-8

Finally, the 
Jensen
 court also noted that Illinois public policy favors arbitration as a means of resolving disputes.  
Jensen
, slip op. at 8.  It concluded that if a party were allowed to avoid arbitration simply by alleging that no contract existed, it would be undermining that policy, as "almost any plaintiff can find some theory or claim upon which to allege that no contract existed, thereby avoiding arbitration."  
Jensen
, slip op. at 8, citing 
Cusamano
, 239 Ill. App. 3d at 654.  Accordingly, the court found that the issue of whether the statute was violated, thereby entitling the plaintiff to rescission of the franchise agreement, was arbitrable under the arbitration clause of the franchise agreement.

Similarly, as discussed in 
Jensen
 with respect to the Franchise Disclosure Act, 
the legislature did not specify that a contract entered in violation of the Consumer Fraud Act is invalid, unenforceable or void.  Instead, the statute provides that the contract 
may
 be avoided or cancelled by the consumer and damages may be sought, thus allowing the consumer to choose to retain the benefit of her bargain despite the existence of her right to cancel.  This option to ignore a violation and nevertheless enforce a noncompliant contract negates the conclusion that the contract would be automatically unenforceable if it violated the Act.  As stated in 
Jensen
, such an option would not be available to the consumer were the contract void or unenforceable.  See 
Jensen
, slip op. at 7.

This conclusion is consistent with the fact that the statute itself allows for the service of collateral notice of the right to cancel, even where such notice has been omitted from the body of the contract.  See 815 ILCS 505/2B (West 2002) (the three-day cancellation period does not commence until the consumer is furnished with notice of her right to cancel).  This would indicate that the mandate under the statute for the inclusion of notice in the agreement is not designed as a condition precedent, in which event the contract would be rendered void by the mere failure to include it in its body.

Likewise, the three-day time limit provides further support for the conclusion that a contract entered into in violation of the Act without the notice provision will still remain in effect where the consumer does not exercise her right to cancel once notice is given.  Again, we follow the conclusion in 
Jensen
 that placing such a time limit on a consumer's right to rescind would be "absurd" were a consumer prevented from rescinding an agreement that violates the Act and is therefore "unenforceable."  See 
Jensen
, slip op. at 8.  In other words, the enforcement of the statute may be waived by the consumer at his election or by his failure to timely notify the seller of his desire to avoid the contract, and after the expiration of the cancellation period, the contract would remain in force despite a violation of the Act's provisions.  See 
Willis v. Ohio Casualty Co.
, 101 Ill. App. 3d 1099, 1107, 428 N.E.2d 1061, 1068 (1981) (likening the Consumer Fraud Act to the Illinois fire claims act and stating that the fire claims act is remedial in nature, and therefore "its operation could be waived by the represented party either at his election or by his failure to timely notify the claims adjuster of his election to avoid the contract").  Given these considerations as well as the public policy considerations favoring arbitration discussed in 
Jensen
, we cannot conclude that compliance with the Act, including giving notice of the right to cancel, is a condition precedent to the existence of an enforceable contract.  

Moreover, contrary to Pauline's apparent contention, the mere existence of the right to cancel under section 2B in and of itself does not indicate that the exercise of that right would render the contract void or unenforceable.  Section 2B allows a consumer to "avoid" or "cancel" a contract within three days of its signing under certain circumstances.  815 ILCS 505/2B (West 2002).  Where no notice of this right to "cancellation" has been provided, the three days does not begin to toll until such notice is given.  815 ILCS 505/2B (West 2002).  There is no indication that the Act prevents a contract from taking effect until after passage of the three-day period or until after notification.  The Act does not provide for the withholding of payment until the cancellation period has passed, nor does it affect taking possession of the merchandise.  In fact, section 2B specifies that upon canceling the contract under the section, the consumer must return all merchandise delivered pursuant to the contract or sale.  But see 
Parsky Funeral Home, Inc. v. Shapiro
, 83 Misc. 2d 566, 567-68, 570, 372 N.Y.S.2d 288, 291, 294 (1975) (court would not enforce the contract made in violation of statute, even though one party had received the benefits of the agreement, nor would it allow a recovery under an implied contract or 
quantum meruit 
theory where the violation of the statute constituted a crime); see 
Willis
, 101 Ill. App. 3d at 1107-08, 428 N.E.2d at 1068 (differentiating between 
Parsky
 and statutes like the Consumer Fraud Act where merchandise or services must be returned upon cancellation or the finding of a violation).  Therefore, the implication is clear that the contract becomes effective at execution, and the right to cancel provided in the Act is nothing more than the right to rescind.  Contrary to Pauline's contentions, we cannot find that the right to cancel under the Act is equivalent to the contract being unenforceable until the time within which to cancel expires.  Moreover, cases addressing section 2B uniformly treat the right to cancel as a right to rescind.  See, 
e.g.,
 
Hurlbert v. Cottier
, 56 Ill. App. 3d 893, 899, 372 N.E.2d 734, 738 (1978); 
Guess v. Brophy
, 164 Ill. App. 3d 75, 79-80, 517 N.E.2d 693, 696-97 (1987).  In this regard, we also note that Pauline herself appears to acknowledge the existence of her contract with Gateway as she originally requested rescission and damages in her third-party complaint, not a rendering of the contract as void.  Accordingly, the trial court properly found that the issue of whether the Act was violated by Gateway is arbitrable.

Pauline also briefly contends that she was given no consideration for the arbitration agreement and therefore it is void.  We agree with Gateway that Pauline has waived this issue as it was never raised before the trial court and may not be raised for the first time on appeal.  
Shell Oil Co. v. Department of Revenue
, 95 Ill. 2d 541, 550, 449 N.E.2d 65, 69 (1983).  Even if we were to consider this contention, however, we would find the argument meritless for the following reasons.

Citing 
Vassilkovska v. Woodfield Nissan, Inc.
, 351 Ill. App. 3d 742, 814 N.E.2d 887 (2004), Pauline specifically asserts that she was given no consideration for two provisions in the arbitration agreement – one which required her to forfeit her right to participate in a class action lawsuit and a second requiring her "to give up a right of discovery."  Consideration is " 'the bargained-for exchange of promises or performances and may consist of a promise, an act[,] or a forbearance.' " 
Vassilkovska
, 351 Ill. App. 3d at 748, 814 N.E.2d at 892, quoting 
Bishop v. We Care Hair Development Corp.
, 316 Ill. App. 3d 1182, 1198, 738 N.E.2d 610, 622 (2000).  

" 'While consideration is essential to the validity of a contract, mutuality of obligation is not.' "  
Vassilkovska
, 351 Ill. App. 3d at 748, 814 N.E.2d at 622, quoting 
Armstrong Paint & Varnish Works v. Continuental Can Co.
, 301 Ill. 102, 108 (1921).  Therefore, while a mutual promise to arbitrate is sufficient consideration to support an arbitration agreement (
Aste v. Metropolitan Life Insurance Co.
, 312 Ill. App. 3d 972, 976, 728 N.E.2d 629, 632 (2000)), that promise need not be equal where any other consideration for the contract, of which the agreement is part, exists (
Vassilkovska
, 351 Ill. App. 3d at 748, 814 N.E.2d at 892-93).

In 
Vassilkovska
, 
this court found an arbitration agreement to be invalid because it was based on the vendor's "illusory promise to arbitrate."  
Vassilkovska
, 351 Ill. App. 3d at 749, 814 N.E.2d at 893.  In that case, the parties signed an arbitration agreement, which was separate from the parties' contract regarding the sale/purchase of a used automobile.  
Vassilkovska
, 351 Ill. App. 3d at 743-44, 814 N.E.2d at 889.  In the arbitration agreement, the parties waived their rights to pursue legal action in a court of law; however, the vendor in effect wholly exempted itself from arbitration by retaining its right to litigate under a wide variety of circumstances.  
Vassilkovska
, 351 Ill. App. 3d at 749, 814 N.E.2d at 893.  The 
Vassilkovska
 court stated that given the exemptions listed by the vendor, it could not conceive of a claim related to the purchase of the vehicle which would subject the vendor to arbitration.  
Vassilkovska
, 351 Ill. App. 3d at 750, 814 N.E.2d at 894.  Upon inquiry into this concern, the vendor conceded there were no such claims.  
Vassilkovska
, 351 Ill. App. 3d at 749-50, 814 N.E.2d at 893.  While the court agreed with the vendor that the parties did not have to commit to identical obligations to have a valid arbitration agreement, it found that the vendor was actually bound by no part of the agreement.  
Vassilkovska
, 351 Ill. App. 3d at 749-50, 814 N.E.2d at 893.  Therefore, no consideration had been given and the agreement was invalid.  
Vassilkovska
, 351 Ill. App. 3d at 751, 814 N.E.2d at 894.

This was not the case here where both parties signed an arbitration agreement stating that either party could unilaterally elect to have any dispute arbitrated and that such an election would forfeit both parties' right to a trial by judge or jury and would equally limit the discovery to which each party was entitled.  As previously stated, the parties' obligations need not be identical.  Nevertheless, the only difference we can discern between the parties' obligations here is that in electing arbitration, Pauline would forfeit her right to join a class action lawsuit against Gateway.  We find this difference insignificant and see no other indication that Gateway's promise was illusory or without consideration as that evidenced by the agreement in 
Vassilkovska
.  Accordingly, even if we were to consider Pauline's waived argument in this regard, we would find that proper consideration was given by way of the parties' mutual commitment to the unilateral election of arbitration.

Finally, Pauline generally asserts, without any citation to case law or the identification of a specific legal violation, that 
Gateway never "presented to the Trial Court a request for arbitration or any other evidence that it had initiated proceedings with the American Arbitration Association."  Pauline has again waived this issue as she fails to provide any cohesive legal argument in this regard, nor does she provide any citation to case law.  See Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(7), eff. October 1, 2001; see also 
People v. Barlow
, 
188 Ill. App. 3d 393, 405, 544 N.E.2d 947, 955 (1989) ("failure to provide this court with any legal argument or citation to supporting authority waives this issue for review").  Regardless, the record also clearly negates her assertion that Gateway never notified the trial court of its wish to arbitrate where it filed a motion to stay litigation pending arbitration pursuant to the arbitration agreement signed by both parties.  We find no provision in the Uniform Arbitration Act requiring a certain type of demand for arbitration (see generally 710 ILCS 5/1 
et seq
. (West 2002)), nor can we find any other reason why Gateway's motion would not serve as sufficient notification that it wished to arbitrate the dispute instead of litigating it in court.  As a result, we will not deny Gateway's arbitration request on these grounds.

Accordingly, the judgment of the circuit court granting the motion to stay litigation pending arbitration is affirmed.

Affirmed.

CAHILL, P.J. and McBRIDE, J. concur.