ROSEMARY KEEFE, Indiv. and on Behalf of Others Similarly Situated, Plaintiff-Appellee, v. ALLIED HOME MORTGAGE CORPORATION *et al.*, Defendants-Appellants.

Fifth District    No. 5—07—0463

Opinion filed July 10, 2009.

Russell K. Scott, Timothy Huskey, and Michelle L. Rousseau, all of Greensfelder, Hemker & Gale, P.C., of Swansea, for appellants.

Jeffrey J. Lowe and Francis J. "Casey" Flynn, and John Steward, of Meyerkord & Steward, LLC, both of St. Louis, Missouri, and David A. Nester, of Nester & Constance, P.C., of Belleville, for appellee.

PRESIDING JUSTICE WEXSTTEN delivered the opinion of the court:

The defendants, Allied Home Mortgage Corp. and Allied Home Mortgage Capital Corp., filed this interlocutory appeal, pursuant to Supreme Court Rule 307(a)(1) (188 Ill. 2d R. 307(a)(1)), from the order of the circuit court of St. Clair County denying their motion to compel arbitration and stay the judicial proceedings in this class action lawsuit filed by the plaintiff, Rosemary Keefe. We reverse and remand with directions.

## BACKGROUND

In 1999, defendant Allied Home Mortgage Capital Corp. (Allied Capital), a mortgage broker, assisted the plaintiff and her husband, Frank Keefe, in obtaining a mortgage loan for the refinancing of their property located at 1922 South Gunderson Avenue in Berwyn, Illinois. On May 18, 1999, the plaintiff and her husband signed several documents related to their loan application, including the arbitration rider that is the subject of this appeal, which provides, in pertinent part, "All disputes, claims[,] or controversies arising from or related to the loan ***, including statutory claims, shall be resolved by binding arbitration, and not by court action, except as provided under 'Exclu-

sions from Arbitration' below." The parties closed on the loan on July 23, 1999.

On September 2, 2004, the plaintiff[1] filed this civil action on behalf of herself and a class consisting of all persons and entities in the United States who used the defendants[2] as a mortgage broker and were charged third-party fees such as credit report fees, appraisal fees, recording fees, messenger/courier fees, and flood certification fees in an amount in excess of their costs to the defendants. The plaintiff alleged that, in processing loans, the defendants engaged third parties to perform certain services, paid for those services, and then charged the borrowers for those services. The plaintiff alleged that the defendants "marked up" the charges (otherwise known as "up charging") for the services and concealed that fact by failing to disclose to the borrowers the actual amounts paid to third parties. The plaintiff asserted claims against the defendants "premised on breach of fiduciary duty, breach of covenant of good faith and fair dealing, unjust enrichment, and consumer fraud."

On December 15, 2004, the defendants filed a motion to compel arbitration and stay the judicial proceedings, along with a memorandum in support thereof, based upon the arbitration rider signed by the plaintiff and her husband. On March 21, 2005, the plaintiff filed a memorandum in opposition to the defendants' motion to compel arbitration and stay the judicial proceedings, arguing that the arbitration rider is unenforceable because it is cost-prohibitive, unsupported by consideration, against public policy, and procedurally and substantively unconscionable. On April 20, 2005, the defendants filed a reply in support of their motion to compel arbitration and stay the judicial proceedings, arguing that the arbitration rider is enforceable. On April 4, 2007, the plaintiff filed a supplemental memorandum in opposition to the defendants' motion to compel arbitration and stay the judicial proceedings, and on July 5, 2007, the defendants filed a supplemental memorandum in support of their motion to compel arbitration and stay the judicial proceedings.

On July 10, 2007, the circuit court held a hearing on the defendants' motion to compel arbitration and stay the judicial proceedings. Following arguments of counsel, the circuit court took the matter under advisement.

---

[1]The plaintiff's husband is now deceased and has never been a party to this litigation.

[2]The plaintiff alleged that defendant Allied Home Mortgage Corp. (Allied Corp.) is a parent corporation to Allied Capital or, in the alternative, that the two companies are joint venturers with an agreement to broker and fund mortgages.

On July 18, 2007, the circuit court entered an order denying the defendants' motion to compel arbitration and to stay the judicial proceedings, finding that the arbitration rider was illusory and procedurally and substantively unconscionable, particularly in light of the exclusion-from-arbitration section. The circuit court found that the order was appealable, pursuant to Supreme Court Rule 307(a)(1). On August 17, 2007, the defendants filed a timely notice of interlocutory appeal.

## ANALYSIS

■ Generally, the standard of review for a decision on a motion to compel arbitration is whether there was a showing sufficient to sustain the circuit court's order. *Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976, 981, 835 N.E.2d 113, 119 (2005). However, where, as here, the circuit court rendered its decision without an evidentiary hearing and without findings of fact, the standard of review is *de novo. Hubbert*, 359 Ill. App. 3d at 981, 835 N.E.2d at 119. In addition, "[t]he determination of whether a contract or a portion of a contract is unconscionable is a question of law, which we review *de novo.*" *Kinkel v. Cingular Wireless, LLC*, 223 Ill. 2d 1, 22, 857 N.E.2d 250, 264 (2006).

We begin our analysis by reviewing the circuit court's finding that the arbitration rider was "illusory" based on the exclusion-from-arbitration provision, which provides, in pertinent part, as follows:

"EXCLUSION FROM ARBITRATION. This agreement shall not limit the right of the Lender to (a) accelerate or require immediate payment in full of the secured indebtedness or exercise the other Remedies described in this Security Instrument before, during[,] or after any arbitration, including the right to foreclose against or sell the Property; [(b)] exercise the rights set forth in the Uniform Covenant labeled 'Protection of Lenders: Rights in the Property' contained in this Security Instrument[;] or (c) exercise *** the right under the terms of this Security Instrument to require payment in full of the Indebtedness upon a transfer of the Property or a beneficial interest therein. Should Borrower appear in and contest any judicial proceeding initiated by Lender under this Exclusion, or initiate any judicial proceeding to challenge any action authorized by this Exclusion, then upon request of Borrower such judicial proceedings shall be stayed or dismissed, and the matter shall proceed to arbitration in accordance with the section entitled 'Arbitration of Disputes'."

"An illusory promise appears to be a promise[ ] but on closer examination reveals that the promisor has not promised to do anything." *W.E. Erickson Construction, Inc. v. Chicago Title Insurance Co.*, 266 Ill. App. 3d 905, 909, 641 N.E.2d 861, 864 (1994). "An illusory

promise is also defined as one in which the performance is optional." *W.E. Erickson Construction, Inc.*, 266 Ill. App. 3d at 909, 641 N.E.2d at 864. An illusory promise "is not sufficient consideration to support a contract." *W.E. Erickson Construction, Inc.*, 266 Ill. App. 3d at 909, 641 N.E.2d at 864.

The defendants' promise to arbitrate in the present case is neither empty nor optional. See *W.E. Erickson Construction, Inc.*, 266 Ill. App. 3d at 909, 641 N.E.2d at 864. Although the arbitration rider contains an exclusion-from-arbitration provision, which itemizes certain claims that are not subject to arbitration, it also provides, "Should Borrower appear in and contest any judicial proceeding initiated by Lender under this Exclusion, or initiate any judicial proceeding to challenge any action authorized by this Exclusion, then upon request of Borrower such judicial proceedings shall be stayed or dismissed, and the matter shall proceed to arbitration ***."

■ "A contract does not lack mutuality merely because its obligations appear unequal or because every obligation or right is not met by an equivalent counterobligation or right in the other party." *Piehl v. Norwegian Old Peoples' Home Society of Chicago*, 127 Ill. App. 3d 593, 595, 469 N.E.2d 705, 706 (1984). "The mutuality requirement is satisfied if each party has made a promise to the other and is therefore an obligor and under a duty to the other contracting party." *Piehl*, 127 Ill. App. 3d at 595, 469 N.E.2d at 706. Under the express terms of the arbitration rider in the present case, the plaintiff has agreed to submit all of her claims to arbitration and may require the defendants to submit all of their claims to arbitration as well. The mutuality requirement is therefore satisfied (see *Piehl*, 127 Ill. App. 3d at 595, 469 N.E.2d at 706), and the defendants' promise to arbitrate is not illusory (see *W.E. Erickson Construction, Inc.*, 266 Ill. App. 3d at 909, 641 N.E.2d at 864).

Moreover, where, as here, an arbitration agreement is a part of a larger agreement, the consideration for the whole agreement is sufficient to support the subsidiary arbitration agreement as well. See *General Motors Acceptance Corp. v. Johnson*, 354 Ill. App. 3d 885, 893-94, 822 N.E.2d 30, 37 (2004) ("Consideration is ' "the bargained-for exchange of promises or performances and may consist of a promise, an act[,] or a forbearance." ' [Citation.] ' "While consideration is essential to the validity of a contract, mutuality of obligation is not." ' [Citation.] Therefore, while a mutual promise to arbitrate is sufficient consideration to support an arbitration agreement [citation], that promise need not be equal where any other consideration for the contract, of which the agreement is part, exists [citation]"). The arbitration rider in the present case expressly states that it is

"incorporated into" the mortgage agreement and that the promise to arbitrate is made "[i]n addition to the covenants and agreements made in the Security Instrument." Therefore, the arbitration rider was a part of the overall loan agreement, and the defendants' obligations under the loan agreement as a whole serve as adequate consideration for the arbitration rider. See *Johnson*, 354 Ill. App. 3d at 893-94, 822 N.E.2d at 37.

■ We next address the circuit court's finding that the arbitration rider was both procedurally unconscionable and substantively unconscionable. A finding of unconscionability may be based on either procedural unconscionability or substantive unconscionability or a combination of both. *Razor v. Hyundai Motor America*, 222 Ill. 2d 75, 99, 854 N.E.2d 607, 622 (2006).

As the supreme court explained in *Kinkel*:

" 'Procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it ***.' *Razor*, 222 Ill. 2d at 100, [854 N.E.2d at 622,] citing with approval *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.*, 86 Ill. App. 3d 980, 989[, 408 N.E.2d 403, 410] (1980). This analysis also takes into account the disparity of bargaining power between the drafter of the contract and the party claiming unconscionability. *Razor*, 222 Ill. 2d at 100[, 854 N.E.2d at 622].
  ***

In *Razor*, we cited portions of *Frank's Maintenance* with approval, but we did not quote at length from that opinion. We do so now:

'Procedural unconscionability consists of some impropriety during the process of forming the contract depriving a party of a meaningful choice. [Citations.] Factors to be considered are all the circumstances surrounding the transaction including the manner in which the contract was entered into, whether each party had a reasonable opportunity to understand the terms of the contract, and whether important terms were hidden in a maze of fine print; both the conspicuousness of the clause and the negotiations relating to it are important, albeit not conclusive factors in determining the issue of unconscionability. ***' *Frank's Maintenance*, 86 Ill. App. 3d at 989-90[, 408 N.E.2d at 410]." *Kinkel*, 223 Ill. 2d at 22-24, 857 N.E.2d at 264-65.

Here, the arbitration rider is not " 'hidden in a maze of fine print' " (*Kinkel*, 223 Ill. 2d at 23, 857 N.E.2d at 264, quoting *Frank's Maintenance & Engineering, Inc.*, 86 Ill. App. 3d at 990, 408 N.E.2d at 410) and is not " 'so difficult to find, read, or understand that the

plaintiff cannot fairly be said to have been aware he was agreeing to it' " (*Kinkel*, 223 Ill. 2d at 22, 857 N.E.2d at 264, quoting *Razor*, 222 Ill. 2d at 100, 854 N.E.2d at 622, citing *Frank's Maintenance & Engineering, Inc.*, 86 Ill. App. 3d at 989, 408 N.E.2d at 410). Instead, the arbitration rider is a separate document, which is prominently titled "**ARBITRATION RIDER**" (in bold typeface in all-capital letters). In addition, the arbitration rider was signed by the plaintiff and conspicuously notified her (in bold typeface in all-capital letters) as follows:

> "**NOTICE: BY SIGNING THIS ARBITRATION RIDER YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT [OF] THE MATTERS DESCRIBED IN THE ARBITRATION[-] OF[-]DISPUTES SECTION ABOVE DECIDED EXCLUSIVELY BY ARBITRATION, AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT HAVE TO LITIGATE DISPUTES IN A COURT OR JURY TRIAL.**"

In *Kinkel*, the court discussed contracts of adhesion as follows:

> "The Cingular service agreement is a contract of adhesion. The terms, including the arbitration clause and the class action waiver therein, are nonnegotiable and presented in fine print in language that the average consumer might not fully understand. Such contracts, however, are a fact of modern life. Consumers routinely sign such agreements to obtain credit cards, rental cars, land and cellular telephone service, home furnishings and appliances, loans, and other products and services. It cannot reasonably be said that all such contracts are so procedurally unconscionable as to be unenforceable." *Kinkel*, 223 Ill. 2d at 26, 857 N.E.2d at 266.

Moreover, in the present case, although there was unequal bargaining power between the contracting parties and the arbitration rider was a part of a form contract drafted by the defendants, unlike in *Kinkel*, the arbitration rider was not a contract of adhesion offered to the plaintiff on a take-it-or-leave-it basis. See *Kinkel*, 223 Ill. 2d at 26, 857 N.E.2d at 266. Instead, paragraph 8 of the arbitration rider specifically states (in bold typeface in all-capital letters) as follows:

> "**THIS IS A VOLUNTARY ARBITRATION AGREEMENT. IF YOU DECLINE TO SIGN THIS ARBITRATION AGREEMENT, LENDER WILL NOT REFUSE TO COMPLETE THE LOAN TRANSACTION BECAUSE OF YOUR DECISION.**"

The plaintiff was aware of the arbitration rider and was not required to agree to arbitration to obtain the loan at issue.

The plaintiff also argues that the arbitration rider is procedurally unconscionable because it does not notify her of the cost of arbitration. The arbitration rider provides, in pertinent part, as follows:

"This arbitration agreement \*\*\* shall be governed by the Federal Arbitration Act (9 U.S.C. §§1-4) and the Code of Procedure of the National Arbitration Forum as in effect at the date of this agreement. Copies of rules and forms can be obtained and any claims can be filed at any National Arbitration Forum office, *www.arbforum.com*, or at P.O. Box 50191, Minneapolis, MN 55405."

In *Kinkel*, the court addressed a similar situation as follows:

"We conclude that there is a degree of procedural unconscionability in the service agreement signed by plaintiff because it did not inform her that she would have to pay anything at all towards the cost of arbitration. She was merely informed that 'fee information' was available 'upon request.' This lack of information regarding the cost of arbitration is an 'additional fact particular to this case [which] tips the balance in plaintiff's favor' [citation], on the question of procedural unconscionability of the contract of which the class action waiver is a part. We do not find this degree of procedural unconscionability to be sufficient to render the class action waiver unenforceable, but it is a factor to be considered in combination with our findings on the question of substantive unconscionability." *Kinkel*, 223 Ill. 2d at 27, 857 N.E.2d at 266.

Similarly, in the present case, the lack of information regarding the cost of arbitration, standing alone, is insufficient to render the arbitration provision procedurally unconscionable, but it is a factor to be considered in combination with our findings on the question of substantive unconscionability. See *Kinkel*, 223 Ill. 2d at 27, 857 N.E.2d at 266.

■ We turn then to the issue of substantive unconscionability. In *Kinkel*, the court adopted the following definition of "substantive unconscionability":

" 'Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed. [Citation.] Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity.' [Citation.]" *Kinkel*, 223 Ill. 2d at 28, 857 N.E.2d at 267.

As discussed above, the arbitration rider in the present case is mutually enforceable by both parties, notwithstanding the exclusion-from-arbitration provision, because that provision provides, "Should Borrower appear in and contest any judicial proceeding initiated by Lender under this Exclusion, \*\*\* then upon request of Borrower such judicial proceedings shall be stayed or dismissed, and the matter shall proceed to arbitration \*\*\*." Thus, the plaintiff may require the defendants to submit all of their claims to arbitration, and there is no

imbalance of obligations or rights among the parties that would render the arbitration rider substantively unconscionable.

The plaintiff also argues that the arbitration rider is cost-prohibitive and, thus, substantively unconscionable. The arbitration rider in the present case contains a class action waiver, which provides, "All disputes subject to arbitration under this agreement shall be arbitrated individually[ ] and shall not be subjected to being joined or combined in any proceeding with any claims of any persons or class of persons other than Borrower or Lender." As the supreme court has made clear, class action waivers are not *per se* unconscionable in the State of Illinois. See *Kinkel*, 223 Ill. 2d at 48, 857 N.E.2d at 278 ("We do not hold that class action waivers are *per se* unconscionable. It is not unconscionable or even unethical for a business to attempt to limit its exposure to class arbitration or litigation, but to prefer to resolve the claims of customers or clients individually"). "[T]he enforceability of a class action waiver, whether or not the contract provides for mandatory arbitration, must be determined on a case-by-case basis, considering the totality of the circumstances." *Kinkel*, 223 Ill. 2d at 42, 857 N.E.2d at 275. "Relevant circumstances include the fairness and balance of the contract terms, the presence of unfair surprise, and the cost of vindicating the claim relative to the amount of damages that might be awarded under the dispute resolution provisions of the contract." *Kinkel*, 223 Ill. 2d at 42-43, 857 N.E.2d at 275.

In *Kinkel*, the court found that, under the circumstances of that case, the class action waiver was unconscionable and unenforceable. *Kinkel*, 223 Ill. 2d at 42, 857 N.E.2d at 274. Those circumstances included a contract of adhesion that required the customer to arbitrate all claims but did not reveal the cost of arbitration and contained a liquidated damages clause, which allegedly operated as an illegal penalty. *Kinkel*, 223 Ill. 2d at 42, 857 N.E.2d at 274-75. In holding that the class waiver provision was substantively unconscionable, the *Kinkel* court reasoned that even if the plaintiff had prevailed at arbitration and was awarded everything she could possibly recover— the return of her $150—it was an "absolute certainty" that she would not be made whole. *Kinkel*, 223 Ill. 2d at 30, 857 N.E.2d at 268. The decision in *Kinkel* turned on the context and language of the agreement before the court: without the ability to bring a class claim, the cost to vindicate the plaintiff's $150 claim would have been the cost of arbitration ($125 in that case) plus her attorney fees. *Kinkel*, 223 Ill. 2d at 29-30, 857 N.E.2d at 268.

■ Following *Kinkel*, we find that the prohibition on the class treatment of small consumer claims substantively unconscionable under the circumstances presented here. In addressing the "cost-

disparity" aspect of substantive unconscionability, the supreme court in *Kinkel* explained that we must consider whether "the cost of vindicating the claim is so high that the plaintiff's only reasonable, cost-effective means of obtaining a complete remedy is as either the representative or a member of a class." *Kinkel*, 223 Ill. 2d at 42, 857 N.E.2d at 275. In making this determination, we consider the cost of bringing the claim individually compared with the damages sought. *Kinkel*, 223 Ill. 2d at 29-30, 857 N.E.2d at 268. We must consider the nature of the claim asserted. *Kinkel*, 223 Ill. 2d at 29, 36, 857 N.E.2d at 267, 271-72. Where, as here, the claim is one brought under the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2006)), the average consumer will not be able to successfully arbitrate or litigate a claim without the assistance of an attorney. Thus, we must consider both the arbitration fees and the attorney fees. *Kinkel*, 223 Ill. 2d at 29-30, 857 N.E.2d at 268.

The plaintiff in this case has alleged that the defendants charged her $50 for a service that actually cost $4. This amounts to a $46 claim. As the defendants point out, however, the plaintiff's trial attorney filed an affidavit pursuant to Supreme Court Rule 222(b) (210 Ill. 2d R. 222(b)) in which he stated that the total damages sought by each class member were in excess of $50,000 but less than $75,000. When asked about this apparent discrepancy at oral arguments, the plaintiff's appellate attorney explained that she intended to seek punitive damages. The defendants argue that, because nothing in the contract or the rules of the National Arbitration Forum prohibits an arbitrator from awarding attorney fees or punitive damages, individual arbitration provides an adequate, cost-effective means of vindicating her claim.

We do not find this argument persuasive. Although the contract does not prohibit an award of punitive damages, there is certainly no guarantee that, assuming the plaintiff prevails on her claim for $46, she will recover punitive damages. Moreover, the amount of punitive damages that can be awarded is limited to an extent by the amount of actual damages proven. See *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 425, 155 L. Ed. 2d 585, 605-06, 123 S. Ct. 1513, 1524 (2003) (explaining that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process").

Further, as in *Kinkel*, the class action waiver here is contained in a contract that contains a mandatory arbitration provision but does not reveal the cost of arbitration to the claimant. *Kinkel*, 223 Ill. 2d at 28-29, 857 N.E.2d at 267. Under the National Arbitration Forum fee

schedule, the filing fee for a claim between $50,001 and $74,999, like the plaintiff's herein, is $240. The filing fee for a claim less than $2,500, which is a closer estimate to the plaintiff's potential recovery, is $25.[3] Add to either amount the attorney fees and the cost of obtaining necessary evidence and the cost of vindicating a claim is likely to exceed the potential recovery.

In addition, as the plaintiff argues, claims under the Consumer Fraud Act involve a significant investment of time and resources on the part of an attorney. Thus, without the ability to proceed as a class representative, the plaintiff may not be able to retain counsel, even assuming that the arbitrator would award her both punitive damages and attorney fees. Small consumer claims such as the plaintiff's are precisely the type of claim that class actions are designed to address. Also weighing in favor of a finding of substantive unconscionability is the nature of the injury alleged: the plaintiff alleges " 'a scheme to deliberately cheat large numbers of consumers out of individually small sums of money.' " Kinkel, 223 Ill. 2d at 36, 857 N.E.2d at 271-72, quoting Discover Bank v. Superior Court of Los Angeles, 36 Cal. 4th 148, 163, 113 P.3d 1100, 1110, 30 Cal. Rptr. 3d 76, 87 (2005). We therefore conclude that the class action prohibition clause is unconscionable.

"[W]here a portion of an arbitration clause is found to be unconscionable, Illinois's strong policy in favor of enforcing arbitration agreements is best served by severing the unconscionable provision and enforcing the remainder of the arbitration clause." Wigginton v. Dell, Inc., 382 Ill. App. 3d 1189, 1198, 890 N.E.2d 541, 549 (2008). Here, the unenforceable prohibition on class arbitration provision is not "so closely connected" with the remainder of the contract that to enforce the valid provisions of the contract without it "would be tantamount to rewriting the [a]greement" (Abbott-Interfast Corp. v. Harkabus, 250 Ill. App. 3d 13, 21, 619 N.E.2d 1337, 1344 (1993)). The main goal of the arbitration clause is to choose an arbitral forum over a judicial forum. This goal can be met without the class arbitration waiver. See Wigginton, 382 Ill. App. 3d at 1198, 890 N.E.2d at 549. The prohibition on class arbitration can be severed from the remainder of the arbitration clause so that the remainder of the clause can be enforced.

## CONCLUSION

For the foregoing reasons, we reverse the order of the circuit court of St. Clair County denying the defendants' motion to compel arbitra-

---

[3]The National Arbitration Forum fee schedule in the record also indicates additional fees that could easily surmount the likely damages.

tion and stay proceedings, and we remand the cause with directions to the circuit court to sever the prohibition-on-class-action provision but to enforce the remainder of the arbitration clause.

Reversed; cause remanded with directions.

WELCH and CHAPMAN, JJ., concur.