FATHER AND SONS, INC., Plaintiff and Counterdefendant-Appellant, v. JOSEPH TAYLOR *et al.*, Defendants and Counterplaintiffs-Appellees.

First District (6th Division)   No. 1—97—0297

Opinion filed November 13, 1998.

450

Gus Giannis, of Berwyn, William P. Danna, of Riverside, and Sklodowski, Franklin, Puchalski & Reimer, of Chicago (Robert Sklodowski, of counsel), for appellant.

Clausen Miller, P.C., of Chicago (James T. Ferrini, Jeffrey J. Asperger, Mary Blake Nasenbenny, Imelda Terrazino, and Melissa Murphy-Petros, of counsel), for appellees.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, Father & Sons, Inc. (Father & Sons), an Illinois corporation, appeals from an order of the circuit court of Cook County denying its petition to vacate an arbitration award made in favor of defendants, Joseph and Christine Taylor (the Taylors), pursuant to section 12 of the Uniform Arbitration Act. 710 ILCS 5/12 *et seq.* (West 1996). On appeal, Father & Sons contends that the trial court erred in denying its petition to vacate the arbitration award and in confirming the award in that: (1) the arbitrator improperly determined that Father & Sons violated the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/10a(e) (West 1996)); (2) the arbitrator exceeded his authority in awarding attorney fees; and (3) the arbitrator violated both the rules of the American Arbitration Association and due process by barring crucial testimony at the arbitration hearing. For the following reasons, we affirm the judgment of the trial court.

The record reveals the following relevant facts. On December 21, 1990, the Taylors entered into a construction contract (contract) with Father & Sons to construct a room addition on their home located at 1409 52nd Place, LaGrange Highlands, Illinois, for approximately $42,000. The contract contained the following arbitration provision:

"Any controversy or claim arising out of or relating to this contract or the breach thereof shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof."

As of July 1991, the Taylors had paid Father & Sons approximately $24,000 on the contract price. Father & Sons failed to complete the work in accordance with the contract, and on February 18, 1992, the parties entered into a second contract. The second contract incorporated the first contract and detailed numerous breaches of the first

contract. The second contract required Father & Sons to complete the work for the remaining balance of $19,215.

On September 22, 1992, Father & Sons filed its first of three complaints against the Taylors in the fifth municipal district for their refusal to pay the balance allegedly due under the second contract. The trial court dismissed the complaint on Father & Sons' motion for voluntary dismissal on November 16, 1992.[1] On June 29, 1993, Father & Sons filed its "First Amended Complaint" in the fourth municipal district for breach of contract and unjust enrichment.[2]

On May 11, 1994, the Taylors filed a five-count counterclaim for breach of contract, breach of implied warranty, breach of express warranty, common law fraud and statutory fraud, all concerning Father & Sons' failure to properly complete the work for which the Taylors contracted.[3] The trial court dismissed Father & Sons' first amended complaint with prejudice on July 8, 1994, while the Taylors' counterclaim remained pending.

On March 21, 1995, Father & Sons moved to compel arbitration of the pending matters, and the Taylors objected. On June 9, 1995, the fourth municipal district transferred all pending matters to the American Arbitration Association (AAA). The transfer order provided as follows:

> "[A]ll matters presently pending before this court will go to arbitration and this action is stayed pending resolution of the arbitration proceedings. If any matters are not resolved by the arbitrator in his final decision they can return to this court."

On December 18, 1995, prior to the commencement of the arbitration proceeding, the arbitrator, Harvey X. Koloms, ruled that he would not hear arguments relating to Father & Sons' previously dismissed complaint against the Taylors or relating to several pending motions

---

[1] At oral argument, Father & Sons stated that it filed three lawsuits, the first complaint in the fifth district, which was dismissed, a second complaint in the fourth district, and the third in the chancery division of the circuit court of Cook County, after entry of the award of the arbitrator. The Taylors stated that Father & Sons filed one lawsuit in the fifth district, *two* lawsuits in the fourth district, and the fourth action in the chancery division.

[2] The record on appeal contains several copies of Father & Sons' "First Amended Complaint For Breach of Contract, Unjust Enrichment and For Other Legal And Equitable Relief," but all copies bear a court file stamp of April 22, 1994.

[3] An order entered on December 18, 1995, by arbitrator Harvey X. Koloms, states that the Taylors filed their counterclaim on May 11, 1994, and that Father & Sons answered the counterclaim on June 1, 1994. The answer does not appear in the record on appeal.

for fees and costs concerning attorney conduct during discovery, as these matters were not the proper subject of the arbitration. On January 10, 1996, Father & Sons sought an order from the fourth municipal district requiring the arbitrator to hear Father & Sons' previously dismissed complaint. The trial court refused to rule on the motion, but the Taylors agreed to allow the arbitrator to hear Father & Sons' complaint in an effort to prevent further delay by the possibility of an interlocutory appeal.

The arbitration hearing proceeded on February 7, 1996, and concluded on March 5, 1996. On May 20, following the submission of posttrial memoranda, the arbitrator returned an award in favor of the Taylors and against Father & Sons on all counts. The arbitrator made several special findings, including, *inter alia*, that Father & Sons failed to complete all the work required by the contracts with the Taylors in a good and workmanlike manner and therefore materially breached the contracts; and that Father & Sons' work was so defective, deficient, incomplete, negligent and incompetent that the construction materially decreased the fair value of the Taylors' home, resulting in the home becoming structurally unsound and dangerous.

The arbitrator further found that Father & Sons, by and through its agent, Ronald Kafka (Kafka), engaged in deceptive acts and practices in violation of the Consumer Fraud Act and that the preponderance of the evidence proved that Kafka was not merely a sales representative but, rather, exercised and maintained substantial control and direction over the affairs, policies, and operations of Father & Sons. The arbitrator therefore declared Kafka principally responsible for the deceptive acts and practices of Father & Sons found to be violations of the Consumer Fraud Act.

The arbitrator awarded the Taylors $40,000 to remedy the deficient design and defects in their home, and $22,006 in litigation costs for services rendered by architectural and construction engineering consultants for a total judgment to the Taylors of $62,006. The arbitrator also awarded $75,000 to the Taylors' attorneys for fees. In addition, the arbitrator ordered Father & Sons to bear the administrative fees and expenses of the AAA for a total of $1,400. The arbitrator further declared all mechanics liens filed against the home of the Taylors by Father & Sons to be null and void.

Father & Sons filed a petition to vacate the arbitration award in the chancery division of the circuit court of Cook County. On December 16, 1996, the circuit court entered an order denying Father & Sons' petition to vacate the order of the arbitrator and confirmed all awards, in addition to awarding the Taylors postjudgment interest. The trial court entered a finding pursuant to Supreme Court Rule 304(a) (134

Ill. 2d R. 304(a)), finding no just reason to delay enforcement or appeal of this matter.

Father & Sons filed its notice of appeal from the order of December 16, 1996, on January 14, 1997.

Subsequently, on April 22, 1998, Father & Sons filed a motion to supplement its brief on appeal. On May 5, 1998, the Taylors filed a motion to strike Father & Sons' supplemental brief. This motion was taken with the case.

On appeal, Father & Sons contends that the trial court erred in denying its petition to vacate the arbitration award and in confirming the award.

## A. Award Under the Consumer Fraud Act

Initially, Father & Sons contends that the arbitrator exceeded his authority in deciding the Taylors' claim under the Consumer Fraud Act (Act) and in finding Father & Sons in violation of the Act. Father & Sons argues that the Taylors' statutory claim was barred by the statute of limitations, which provides that an action must be commenced within three years after the cause of action accrued (815 ILCS 505/10a(e) (West 1996)).

■ Our supreme court has long established that arbitration awards should be construed, wherever possible, so as to uphold their validity. *Merritt v. Merritt*, 11 Ill. 565 (1850); *Rauh v. Rockford Products Corp.*, 143 Ill. 2d 377, 574 N.E.2d 636 (1991). Section 12 of the Uniform Arbitration Act (710 ILCS 5/12 (West 1996)) sets forth the grounds for vacating an award. Section 12(a)(3), relied upon by Father & Sons, provides, in pertinent part:

"Vacating an award. (a) Upon application of a party, the court shall vacate an award where:

* * *

(3) The arbitrators exceeded their powers." 710 ILCS 5/12(a)(3) (West 1996).

A presumption exists that the arbitrator did not exceed his or her authority. *Darst v. Collier*, 86 Ill. 96 (1877); see also *White Star Mining Co. v. Hultberg*, 220 Ill. 578, 77 N.E. 327 (1906). Further, it is well established that judicial review of an arbitrator's award is intended to be more limited than appellate review of a trial court's decision. *Bernhardt v. Polygraphic Co.*, 350 U.S. 198, 203, 100 L. Ed. 199, 205, 76 S. Ct. 273, 276 (1956); *Garver v. Ferguson*, 76 Ill. 2d 1, 389 N.E.2d 1181 (1979). As the Supreme Court stated in *Burchell v. Marsh*, 58 U.S. 344, 17 How. 344, 15 L. Ed. 96 (1855):

"Arbitrators are judges chosen by the parties to decide the matters submitted to them, finally and without appeal. As a mode of settling disputes it should receive every encouragement from courts

of equity. If the award is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a court of equity will not set it aside for error either in law or fact. A contrary course would be a substitution of the judgment of the Chancellor in place of the judges chosen by the parties, and would make an award the commencement, not the end, of litigation." *Burchell*, 58 U.S. at 349, 15 L. Ed. at 99.

This rationale also applies to this court of review.

■ The record shows that the Taylors filed their counterclaim, including common law and statutory consumer fraud claims on May 11, 1994, while Father & Sons' first amended complaint (filed June 1993) was still pending. The counterclaim addressed breaches of both the original contract and the second contract, which superseded the original contract. The Taylors alleged that, by July 1991, Father & Sons failed to complete work contracted for on December 21, 1990. The parties entered into a new contract on February 18, 1992, which superseded and controlled the contract of December 1991. The Taylors' counterclaim was timely filed prior to February 1995, three years from entry of the second contract.

Father & Sons' alternative contention that the contract itself provides a statute of limitations of only one year, as it includes a guarantee of one year on labor and materials, is unavailing. The contract clearly provides a guarantee that the work will "be free of all problems for a period of one year *from the completion of the work* described in this agreement." (Emphasis added.) This lawsuit arose out of the fact that the work was never completed.

Father & Sons further contends that the trial court failed to rule on the Taylors' claim for common law consumer fraud and that an arbitrator is not statutorily enabled to make findings as to violations of the Consumer Fraud Act. The record shows that on June 9, 1995, the circuit court transferred all matters "presently pending before the court" to arbitration. The Taylors' counterclaim, including the consumer fraud claims, was still pending and was properly transferred to arbitration. Father & Sons misleads this court by stating that "only a Court is statutorily enabled to make findings as to violation [*sic*] of the Consumer Fraud Act." In fact, section 10a(a) of the Act provides that a court "in its discretion may award actual damages or any other relief which the court deems proper." 815 ILCS 505/10a(a) (West 1996). The Act does not prohibit the resolution of a dispute by arbitration. See, *e.g., Cruz v. Northwestern Chrysler Plymouth Sales, Inc.*, 179 Ill. 2d 271, 280, 688 N.E.2d 653 (1997) (consumer complaints under Consumer Fraud Act against automobile dealerships and manufacturers submitted to arbitration). At the arbitration hearing, evidence

established both common law fraud and violations of the Consumer Fraud Act. The arbitrator specifically made a finding that Father & Sons violated the Act and made his award appropriately according to the statute.

Finally, Father & Sons contends that the arbitrator improperly made formal findings against Ronald W. Kafka for violations of the Act. The record belies Father & Sons' assertion that the arbitrator made a finding that Ronald Kafka, a nonparty, violated the Act. The arbitrator found:

> "[T]he preponderance of the evidence proved that Ronald Kafka exercised and maintained substantial control and direction over the affairs, policies, and operations of Father & Sons, totally inconsistent with a position of 'sales representative'; and, therefore, Ronald Kafka is found to be a responsible principal and party in control and in direction *of those acts and practices of Father & Sons which were violations of the Consumer Fraud and Deceptive Business Practices Act.*"

The record shows that the arbitrator entered an award against Father & Sons, not Ronald Kafka. Father & Sons has failed to show that the arbitrator exceeded his authority in finding that Father & Sons violated the Consumer Fraud Act.

## B. Attorney Fees

Father & Sons further argues that the arbitrator erred in awarding attorney fees to the Taylors. Father & Sons argues that the contract did not specifically allow for attorney fees and that the award of attorney fees and costs is disfavored in Illinois at common law.

In the present case, as stated above, the Taylors alleged both statutory and common law consumer fraud against Father & Sons. The Consumer Fraud Act specifically provides for attorney fees to a prevailing party alleging fraudulent and deceptive practices. 815 ILCS 505/10a (West 1996); *Casey v. Jerry Yusim Nissan, Inc.*, 296 Ill. App. 3d 102, 694 N.E.2d 206 (1998); *Prior Plumbing & Heating Co. v. Hagins*, 258 Ill. App. 3d 683, 630 N.E.2d 1208 (1994). In addition, actions at common law fraud provide for the award of attorney fees and costs, as well as punitive damages. *Black v. Iovino*, 219 Ill. App. 3d 378, 393, 580 N.E.2d 139, 149-51 (1991).

■ Our supreme court has determined that, where a case is submitted to arbitration for a hearing, it is the responsibility of the arbitrator to dispose of all claims for relief, including those for attorney fees: "Because statutory fee awards can be a substantial, even predominate portion of a party's ultimate recovery, excluding fee petitions from consideration by the arbitrators would make the arbitration process pointless." *Cruz*, 179 Ill. 2d at 280. The determination as to whether

fees should be awarded under the Consumer Fraud Act involves consideration of the time and labor required, the novelty and difficulty of the questions involved, the experience and ability of counsel, the skill necessary to perform the legal services rendered, the customary fees charged for such services, and the benefits resulting to the client. *Cruz*, 179 Ill. 2d at 281, citing *Chesrow v. Du Page Auto Brokers, Inc.*, 200 Ill. App. 3d 72, 76, 557 N.E.2d 1301 (1990). These factors require direct knowledge of the underlying action as well as counsel's performance, and it is the arbitrator who possesses that knowledge. Therefore, it is proper for the arbitrator to rule on statutory fee requests. *Cruz*, 179 Ill. 2d at 281.

■ The record shows that the arbitrator reviewed a detailed petition for attorney fees and costs filed by Clausen Miller P.C., the Taylors' counsel, requesting $101,453.26. The arbitrator similarly reviewed a petition filed by William P. Danna, the attorney for Father & Sons, requesting fees and costs in the amount of $61,206.74. The arbitrator noted that the case involved a collection matter of $19,215. The arbitrator awarded $75,000 to the Taylors for attorney fees and no award for attorney fees to Father & Sons.

The Taylors note that, in its petition for administrative review of the arbitrator's award before the circuit court, Father & Sons failed to include the fee petitions reviewed by the arbitrator. Subsequently, this court granted Father & Sons' motion to supplement the record on appeal with fee petitions that were never filed before the circuit court. We note that any documentation not before the trial court is not properly reviewable before this court on appeal. We therefore decline to consider the fee petitions contained in the supplemental material submitted by Father & Sons.

Under these circumstances, in light of the policy in favor of arbitration, and absent any other statutory ground for vacating or modifying the award, there is no basis for disturbing the arbitrator's award of attorney fees to the Taylors.

## C. Barring Crucial Testimony

Father & Sons further contends that the arbitrator improperly excluded Ronald Kafka from the arbitration proceeding, thereby barring "crucial testimony." Father & Sons argues that the arbitrator violated Rule 25 of the construction industry rules of the AAA as well as due process by excluding Kafka from the hearing, other than for his testimony.

■ Rule 25 of the AAA provides as follows:

"Any person having a direct interest in the arbitration is entitled to attend hearings. The arbitrator shall otherwise have the power

to require the exclusion of any witness other than a party or other essential person during the testimony of any other witness and it shall be discretionary with the arbitrator to determine the propriety of the attendance of any other person."

Father & Sons argues that the evidence at the arbitration proceeding revealed that Kafka had both a "direct interest" in the arbitration and that he was an "essential person" for the case of Father & Sons. Although Kafka testified at the hearing as a witness, Father & Sons argues that the arbitrator's exclusion of Kafka from all the remaining aspects of the hearing denied *Kafka* his right to cross-examine "his accusers."

The Taylors initially respond that because Father & Sons made no offer of proof as to what additional evidence Kafka might have offered to his extensive 300-plus page testimony, the issue is waived for review. *Schaffner v. Chicago & North Western Transportation Co.*, 129 Ill. 2d 1, 541 N.E.2d 643 (1989).

■ Nevertheless, the record shows that the arbitrator properly excluded Kafka from remainder of the arbitration hearing where Kafka continually denied his affiliation with Father & Sons, other than as an "independent contractor." Although the Taylors testified that Kafka told them that he was the president and that he owned and controlled the business, at the hearing, Kafka and his attorney insisted that Kafka was neither a shareholder, director, officer nor manager of Father & Sons. Michael Kafka (Kafka's son) confirmed Kafka's assertion.

Father & Sons cannot have it both ways on this issue. On the one hand, Father & Sons stands by its position that Kafka was nothing but an independent contractor salesman for the company. On the other hand, Father & Sons argues that because the arbitrator made a special finding that Kafka is a "responsible principal and party in control and in direction," of the acts of Father & Sons, Kafka should have been included in the entirety of the proceedings. The Taylors suggest that Kafka's evasiveness regarding his status as a principal in Father & Sons emanates from the 1989 consent decree into which Kafka entered with the Illinois Attorney General, and on behalf of various of his pseudonym companies. See, *e.g., People ex. rel. Hartigan v. Kafka & Sons Building & Supply Co.*, 252 Ill. App. 3d 115 (1993). Had Kafka admitted a controlling connection to Father & Sons, he would have been required to submit to the provisions of the consent decree.[4] Under the facts presented here, Father & Sons has failed to

---

[4]See also *People ex. rel. Ryan v. Kafka*, No. 1—95—3852 (September 29, 1997), filed pursuant to Supreme Court Rule 23 (155 Ill. 2d R. 23(b)). This unpublished order is not precedential. 155 Ill. 2d R. 23(e).-

show that the arbitrator improperly barred Kafka from participating in all aspects of the hearing.

## D. Removal of Mechanics Liens

■ Lastly, Father & Sons contends that the trial court improperly affirmed the portions of the arbitrator's award requiring Father & Sons to remove all subcontractors' mechanics liens filed against the Taylors. Father & Sons argues that this relief is injunctive in nature, that the subcontractors were not parties to the arbitration proceedings, and that Father & Sons cannot control the actions of its subcontractors. Therefore, Father & Sons concludes that the arbitrator exceeded his authority in this aspect of the award resulting in prejudice to Father & Sons.

The relevant award entered by the arbitrator provided as follows:
> "6. All mechanic liens filed against the home of Joseph and Chris Taylor by Father & Sons, Inc., and/or its subcontractors are declared null and void and ordered removed forthwith."

This order is valid in that it is incumbent upon any subcontractors with a separate and distinct legal interest to assert a lien on the property. *State Bank v. Winnetka Bank, Inc.*, 245 Ill. App. 3d 984, 614 N.E.2d 862 (1993). The Taylors call our attention to a portion of the transcript of the hearing on Father & Sons' petition to vacate the award wherein the trial court noted that the lien of one subcontractor was prepared by Father & Sons' vice president and was placed against the Taylors' home for work performed by the subcontractor on the Taylors' home under the authority, direction and control of Father & Sons.

Father & Sons has failed to demonstrate either that the arbitrator exceeded his authority or that it was prejudiced by the award nullifying all mechanics liens. For this reason, as well as all of the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

BUCKLEY and QUINN, JJ., concur.