NADEJDA VASSILKOVSKA, Plaintiff-Appellee, v. WOODFIELD NISSAN, INC., Defendant-Appellant.

First District (2nd Division)   No. 1—03—1559

Opinion filed May 24, 2005.

Swanson, Martin & Bell, of Lisle (Bruce S. Terlep and Christian A. Sullivan, of counsel), for appellant.

Krohn & Moss, Ltd., of Chicago (Larry P. Smith, of counsel), for appellee.

JUSTICE GARCIA delivered the opinion of the court:

This interlocutory appeal stems from the trial court's denial of defendant Woodfield Nissan, Inc.'s (Woodfield) motion to dismiss and compel arbitration.[1]

In July 2002, the plaintiff, Nadejda Vassilkovska, purchased a used automobile from Woodfield. In addition to the sales contract, the plaintiff signed an arbitration agreement (Arbitration Agreement). In February 2003, the plaintiff filed a four-count complaint against Woodfield. In April 2003, Woodfield filed a motion to dismiss and compel arbitration. In May 2003, the trial court heard arguments on Woodfield's motion and denied it. This interlocutory appeal followed with Woodfield seeking reversal of the trial court's May 2003 order denying its motion to compel arbitration.

---

[1]On January 26, 2005, our supreme court directed us to vacate our judgment in *Vassilkovska v. Woodfield Nissan, Inc.*, 351 Ill. App. 3d 742, 814 N.E.2d 887 (2004), and to reconsider our decision in light of *Jensen v. Quik International*, 213 Ill. 2d 119, 820 N.E.2d 462 (2004), which reversed our decision in *Jensen v. Quik International*, 345 Ill. App. 3d 713, 801 N.E.2d 1124 (2003), and overruled *Barter Exchange, Inc., of Chicago v. Barter Exchange, Inc.*, 238 Ill. App. 3d 187, 606 N.E.2d 1267 (1992), both of which we cited in our original opinion.

## BACKGROUND

In July 2002, the plaintiff purchased a used 2000 Nissan Sentra from Woodfield. The parties signed two separate documents. The purchase contract, signed by both parties, indicated an "unpaid balance" of $4,598.44. The plaintiff also signed a separate document titled Arbitration Agreement. In pertinent part the parties' Arbitration Agreement stated:

> "That in consideration for your agreement to this Arbitration Agreement, we hereby waive any and all rights to pursue any legal action in a court of law, with the exception of those actions specifically excluded herein. \*\*\*
>
> A 'Dispute' is any controversy or claim (other than: a claim relating to the buyer's failure to pay an agreed upon down payment or failure to pay any amount due pursuant to a promissory note executed in lieu of a cash down payment: as to the issuance, by buyer, of a check which is not honored by the buyer's bank; a buyer's failure to provide good title to a trade-in vehicle; a misrepresentation, by buyer, concerning the amount remaining due on any loan concerning a trade-in vehicle; any claim relating to the possession, repossession or replevin of the vehicle; or relating to actions to enforce any Retail Installment Contract executed by you in connection with the purchase of the vehicle) arising from or relating to the vehicle you have purchased from us on the date shown above. \*\*\* The term 'dispute' also includes any questions regarding whether a matter is subject to arbitration under this Arbitration Agreement."

In the parties' Arbitration Agreement the plaintiff agreed to waive her right to pursue any cause of action, related to the sales transaction for the car, in a court of law. In turn, Woodfield agreed to waive all rights to pursue any legal action in a court of law, except for those listed in the Arbitration Agreement as set out above.

Sometime later, the plaintiff received a financing agreement from her lender that indicated an "amount due" of $7,235.12 on her vehicle. The plaintiff noticed a $2,636.68 discrepancy between the "unpaid balance" on the purchase contract, and the "amount due" listed on the financing agreement.

In February 2003, the plaintiff filed a four-count complaint against Woodfield alleging a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 et seq. (West 2000)), common law fraud, a violation of the Truth in Lending Act (15 U.S.C. § 1601(a) (2000)), and a violation of the Credit Services Organizations Act (815 ILCS 605/1 et seq. (West 2000)). According to the plaintiff's complaint, her allegations of fraud stemmed from Woodfield's misrepresentations "regarding the price of

the Sentra and the costs of financing the vehicle." The plaintiff's complaint specifically alleged:

"6. Defendant represented to plaintiff that financing was approved such that there existed an outstanding balance of $4,598.41 to be paid over three (3) years at $154.00 per month.

7. Defendant misrepresented, omitted or otherwise concealed that:

a. The outstanding balance on the financing agreement was $7,235.12

b. The balance was to be paid over five (5) years."

Woodfield filed a motion to dismiss and compel arbitration arguing that the Cook County circuit court was the improper venue for the complaint pursuant to the parties' Arbitration Agreement.

The plaintiff responded to Woodfield's motion by emphasizing several facts. Specifically, the plaintiff was looking to purchase a vehicle, she told the sales person her spending limit was between $5,000 and $7,000, and the sales person showed her a $9,000 automobile and convinced her to attempt financing to afford the vehicle. Plaintiff alleged that after being convinced to purchase the vehicle, she was given a contract with an "unpaid balance" of $4,598.41 and the sales person told her she would pay $154 per month for three years. However, when she received a payment book from the lender, the unpaid loan balance and "amount due" was shown as $7,235.12 with payments spanning five years. The plaintiff argued that (1) the Arbitration Agreement should not be enforced because she was seeking rescission of the entire sales contract, including the Arbitration Agreement; (2) there was a lack of consideration supporting the Arbitration Agreement; and (3) Woodfield's attempt to defeat the plaintiff's substantive rights under the Consumer Fraud Act was unconscionable and against public policy.

Woodfield responded to the plaintiff's arguments by noting that the parties' Arbitration Agreement specifically allowed an arbitrator to decide if a controversy was subject to the Arbitration Agreement. Also, Woodfield argued, as subsequently stated in its brief before this court, that "it has agreed to arbitrate any and all claims that the plaintiff could bring. In so agreeing, [it] agreed to forbear its right to seek judicial review of those issues." Finally, Woodfield argued the Arbitration Agreement did not violate public policy because similar arbitration agreements had been upheld.

In May 2003, the trial court heard oral argument on Woodfield's motion. Although Woodfield asserts the trial court denied its motion based on the plaintiff's argument that the Arbitration Agreement was "unconscionable," we have found no record of that reasoning in the

trial court's order. This interlocutory appeal followed pursuant to Supreme Court Rule 307(a)(1) (188 Ill. 2d R. 307(a)(1)).

In our first opinion, *Vassilkovska v. Woodfield Nissan, Inc.*, 351 Ill. App. 3d 742, 814 N.E.2d 887 (2004), we affirmed the circuit court's denial of Woodfield's motion to dismiss and compel arbitration because we found that there was no consideration on the part of Woodfield to support the plaintiff's promise to arbitrate. As previously noted, on January 26, 2005, our supreme court directed us to vacate our judgment and reconsider our decision in light of *Jensen v. Quik International*, 213 Ill. 2d 119, 820 N.E.2d 462 (2004).

In light of our supreme court's directive, we have reviewed the case before us and once again affirm the circuit court.

## ANALYSIS

### I. Standard of Review

■ We first note that the parties disagree regarding the standard of review applicable to this case. Generally, interlocutory appeals "are reviewed under an abuse of discretion standard to determine whether the trial court was correct in granting or denying the relief requested." *Peregrine Financials & Securities v. Hakakha*, 338 Ill. App. 3d 197, 202, 788 N.E.2d 263 (2003). Our review of the record in the instant case reveals that the circuit court heard oral argument on Woodfield's motion to dismiss and compel arbitration; however, it did not hold an evidentiary hearing prior to entering its order denying the motion to compel arbitration, and neither party argues that such hearing was necessary. The trial court's denial of Woodfield's motion was made in the absence of any findings as to any factual issues. Where the trial court made no factual findings and its decision was based on a purely legal analysis, the decision to deny Woodfield's motion to compel arbitration is reviewable *de novo*. See *Peregrine*, 338 Ill. App. 3d at 202 (where a trial court's ruling was one of law, a *de novo* standard of review is appropriate); *Hutcherson v. Sears Roebuck & Co.*, 342 Ill. App. 3d 109, 115, 793 N.E.2d 886 (2003).

We note that our *de novo* review of this interlocutory appeal concerns only the question of whether there was a sufficient showing to sustain the circuit court's order denying the motion to compel arbitration. See *Bass v. SMG, Inc.*, 328 Ill. App. 3d 492, 496, 765 N.E.2d 1079 (2002).

### II. Arbitration Agreement as Contract

An agreement to arbitrate is treated like any other contract. *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997). The Uniform Arbitration Act (the Uniform Act) (710 ILCS 5/1

*et seq.* (West 2000)) empowers courts, upon application of a party showing an agreement to arbitrate, to compel or stay court action pending arbitration. 710 ILCS 5/2 (West 2000). However, without a contract to arbitrate, there can be no forced arbitration. *Aste v. Metropolitan Life Insurance Co.*, 312 Ill. App. 3d 972, 975-76, 728 N.E.2d 629 (2000).

The plaintiff contends that the Arbitration Agreement is not a contract at all because any promise to arbitrate by Woodfield was illusory and, therefore, the Arbitration Agreement is unenforceable because of the absence of the essential requirement of consideration to make out an enforceable contract.

■ Woodfield contends that the parties's Arbitration Agreement is supported by sufficient consideration as to make the Arbitration Agreement contractually binding upon the parties and, therefore, the trial court erred in denying its motion to dismiss the plaintiff's complaint and compel arbitration. As such, Woodfield asserts that the question we must answer is "whether sufficient consideration exists for the [parties'] agreement to arbitrate."

Implicit in this question is the notion that the Arbitration Agreement is a separate contract from the contract for the sale of the car, thus requiring its own consideration.

The parties' Arbitration Agreement is a document separate and apart from the purchase contract. The Arbitration Agreement also contains specific survival language separate and apart from the purchase of the automobile or the retail installment contract. Specifically, the parties' Arbitration Agreement states, "[t]his Arbitration Agreement shall, with respect to such dispute, survive the termination or expiration of any purchase order and/or bill of sale, or any retail installment contract executed at the time the vehicle is purchased." As such, the Arbitration Agreement is a contract in its own right and must be reviewed to ensure that it contains the elements necessary for the formation of a contract. "When deciding whether there is a valid agreement to arbitrate, 'courts generally *** should apply ordinary state-law principles that govern the formation of contracts.' " *Hutcherson*, 342 Ill. App. 3d at 116, quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 131 L. Ed. 2d 985, 993, 115 S. Ct. 1920, 1924 (1995).

## III. Consideration[2]

Woodfield frames the dispositive issue in terms of consideration:

[2]Although some courts analyze the topic of consideration in terms of mutuality of obligation, this is nothing more than a proxy for consideration. *Lopez v. Plaza Financial Co.*, No. 95—C—7567 (N.D. Ill. April 25, 1996).

"whether sufficient consideration exists for the [parties'] agreement to arbitrate."

Woodfield also maintains that the arbitration agreement in this case is similar to the arbitration agreement found valid in *Bishop v. We Care Hair Development Corp.*, 316 Ill. App. 3d 1182, 738 N.E.2d 610 (2000), which reserved for the defendant the right to seek judicial review for causes of action specifically dealing with its sublease, yet compelled the plaintiff to seek arbitration for all causes of action. *Bishop*, 316 Ill. App. 3d at 1198. Woodfield asserts that the parties' Arbitration Agreement was supported by consideration and argues its retention of certain rights does not invalidate that consideration.

The plaintiff, on the other hand, contends that Woodfield's promise to arbitrate was "illusory" and there was no consideration because Woodfield "made sure that as to every conceivable right that it might want to press, the arbitration provision did not stand as a bar to [Woodfield's] going to court."

We agree with the plaintiff. A legally enforceable contract is an exchange, and the elements of a contract include offer, acceptance, and consideration. *Sheller v. Frank's Nursery & Crafts, Inc.*, 957 F. Supp. 150, 154 (N.D. Ill. 1997). "It is a basic tenet of contract law that in order for a promise to be enforceable against the promisor, the promisee must have given some consideration for the promise." *Gibson*, 121 F.3d at 1130. Consideration is defined as a bargained-for exchange, whereby the promisor, here, the plaintiff, receives some benefit, or the promisee, here, Woodfield, suffers detriment. See *In re Marriage of Bennett*, 225 Ill. App. 3d 828, 832, 587 N.E.2d 577 (1992), quoting *Libertyville Township v. Woodbury*, 121 Ill. App. 3d 587, 592 (1984) (defined "consideration" as " 'any act or promise which is a benefit to the party or [detriment] to the other' "). Thus, in order for the plaintiff's agreement to arbitrate, rather than to litigate, any claim against Woodfield, there must be some detriment to Woodfield, or some benefit to the plaintiff, that was bargained for in exchange for the plaintiff's promise to arbitrate all disputes. Clearly, what is required is consideration, as with any contract.

We also acknowledge Woodfield's contention and the prognostication in *Design Benefit Plans, Inc. v. Enright*, 940 F. Supp. 200, 205 (N.D. Ill. 1996), upon which it relies, that:

> "[T]he Illinois Supreme Court *** would not find an arbitration clause, which compels one party to submit all disputes to arbitration but allows the other party the choice of pursuing arbitration

Consistent with the Restatement (Second) of Contracts, section 79, we elect to use "consideration" in the course of our analysis.

or litigation, to be invalid for lack of mutuality of obligation or remedy where the contract as a whole is otherwise supported by consideration on both sides."

The problem for Woodfield is that this is not such a case. We are not confronted with an arbitration clause in a contract supported by consideration on both sides. *Aste*, 312 Ill. App. 3d at 976 (under both Illinois and federal law, a mutual promise to arbitrate is sufficient consideration to support an arbitration agreement). But, rather, the issue before us, as Woodfield plainly states, is whether there is consideration by Woodfield to support the independent contract that is the Arbitration Agreement. As in *Gibson*, in the present case, Woodfield cannot point to its own promise to arbitrate in order to make enforceable the plaintiff's promise to do likewise. See *Gibson*, 121 F.3d at 1131. The Arbitration Agreement contains no promise on Woodfield's part to submit claims to arbitration. See *Gibson*, 121 F.3d at 1131. In fact, the Arbitration Agreement, by virtue of the exceptions outlined in it, leaves no claim that Woodfield would be required to submit to arbitration. See *Gibson*, 121 F.3d at 1131. The language of the Arbitration Agreement makes clear that its purpose is to force the plaintiff to arbitrate any claim she may assert against Woodfield, while excluding Woodfield from that same promise. There is nothing in the Arbitration Agreement to suggest that Woodfield was required to forgo a judicial forum in favor of arbitration. Therefore, we conclude that the Arbitration Agreement itself did not contain consideration for the plaintiff's promise in the form of a promise by Woodfield to submit disputes to arbitration.[3] See *Gibson*, 121 F.3d at 1131 ("In the present case, however, [the defendant] cannot point to its own promise to arbitrate in order to make enforceable [the plaintiff's] promise to do likewise. The Understanding contains no promise on [the defendant's] part to submit claims to arbitration. It is worded entirely in terms of [the plaintiff's] obligation to submit her claims to arbitration[;] \*\*\* it contains no promise on [the defendant's] part").

We further note that Woodfield is correct in asserting that, often,

---

[3]Woodfield's claim that the waiver of its "right" to litigate any claim brought by the plaintiff before an arbitrator is consideration in the form of a detriment to Woodfield is, to put it mildly, disingenuous. The Arbitration Agreement does not speak in terms of the forum where one may defend a claim, nor are we presented with any example of such an agreement based on a promise to arbitrate. Obviously, the Arbitration Agreement speaks in terms of prosecuting a claim, not defending against one. The forum for defending a claim is determined by the forum where the claim must be presented. This "heads I win, tails you lose" argument by Woodfield simply serves to reinforce our conclusion that its promise to arbitrate is wholly illusory.

consideration for one party's promise to arbitrate is the other party's promise to do the same. A *mutual* promise to arbitrate would be sufficient consideration to support an independent arbitration agreement. See *Gibson*, 121 F. 3d at 1130. Mutuality of obligation is required only to the extent that both parties to an agreement are bound or neither is bound; that is, if the requirement of consideration has been met, mutuality of obligation is not essential. The converse, of course, is where there is no consideration independent of the mutuality of obligation; then both parties to an agreement are bound or neither is bound. If there is no consideration and no mutuality of obligation, then neither party is bound.

Although both parties signed the Arbitration Agreement in which they "waive[d] all rights to pursue any legal action in a court of law," Woodfield exempted itself from arbitration by specifically securing its right to seek assistance in a court of law for a host of issues, primarily those dealing with the recoupment of money from the plaintiff. Specifically, Woodfield retained the right to pursue the following claims: (1) the plaintiff's failure to pay according to the purchase contract; (2) a check not being honored by the plaintiff's bank; (3) the plaintiff's failure to provide good title on a trade-in vehicle; (4) the plaintiff's misrepresentation concerning the loan amount due on any trade-in vehicle; (5) any claim relating to possession, repossession, or replevin of the automobile; and (6) any action to enforce any retail installment contract executed by the purchaser. Thus, the plaintiff, as purchaser, waives any right to sue Woodfield in a court of law, but Woodfield, as seller, retains the right to sue the plaintiff for a laundry list of reasons. See *Lopez v. Plaza Finance Co.*, No. 95—C—7567 (N.D. Ill. April 25, 1996) ("Both plaintiff and defendant have agreed to submit all claims 'arising out of the contract' to binding arbitration. However, defendant may pursue any 'dispute or controversy as to whether or not [plaintiff] has committed an act of default' in a court of law or under non-judicial remedies such as power of sale. Given the underlying contract, any breach by defendant requires plaintiff to arbitrate; any breach by plaintiff would be considered, at the very least, 'a dispute or controversy' as to whether or not [plaintiff] defaulted, and allows defendant to sue in court. Though both parties appear to be required to arbitrate any disputes 'arising out of the contract,' defendant has failed to identify any class of legitimate claims it might bring which would not relate to plaintiff's breach or default, and which would thus be subject to arbitration").

When Woodfield was asked by this court during oral argument to specify a claim that would not be exempt from the parties' Arbitration Agreement and that could constitute consideration, Woodfield sug-

gested any claims other than those related to the purchase of the vehicle would be subject to arbitration. No specific claim was offered. Woodfield also suggested that as to claims the plaintiff may bring against it in arbitration, Woodfield gave up its right to defend or to litigate those claims in the circuit court. Specifically, Woodfield's "Reply in Support of Motion to Compel Arbitration" stated, "[i]n so agreeing [to arbitrate any claims brought by the plaintiff], Woodfield Nissan agreed to forbear its right to seek judicial review of those issues."[4]

Accordingly, we hold that where the agreement to arbitrate is itself a separate document, purporting to bind each party to the arbitration agreement, but subsequently creates a total exclusion of one party's obligation to arbitrate, the obligation to arbitrate is illusory and unenforceable. See *Lopez*, No. 95—C—7567 (obligation to arbitrate was "obfuscated and rendered illusory by contradictory terms"). At the time the Arbitration Agreement in this case was signed, there was no consideration on the part of Woodfield to support the plaintiff's promise to arbitrate and "waive any and all rights to pursue any legal action in a court of law."

While we agree with Woodfield that "parties do not have to agree to identical obligations to nonetheless have a valid and enforceable arbitration agreement," in this case, Woodfield's promise to arbitrate was an empty one because Woodfield completely exempted issues that could arise from its sale of the automobile to the plaintiff. Effectively, in its Arbitration Agreement with the plaintiff, Woodfield enumerated all the reasons it would have to sue the plaintiff and, thus, exempted itself from the parties' Arbitration Agreement. What claims, other than those related to the purchase of the plaintiff's vehicle, would Woodfield pursue? We can think of no specific claim, and Woodfield was unable to provide us with a specific example, either in its brief or during questioning in oral argument, of a claim that it would be compelled to submit to arbitration pursuant to the Arbitration Agreement.

---

[4]We are unable to determine the meaning of this assertion in the context of this case. Surely, it was not the plaintiff's demand that the Arbitration Agreement be signed by the parties. This was Woodfield's choice. To claim that Woodfield gives up its right to contest a claim pressed by the plaintiff before an arbitrator is disingenuous, if not wholly misleading. Woodfield claims its "waiver" as "consideration" as if it were the buyer, not the seller, for whom arbitration is the desired form of resolving disputes. We reject Woodfield's claim that its "waiver" of its right to contest arbitration is somehow valid consideration; such a "waiver" is no less illusory than its obligation to arbitrate under the terms of the Agreement.

## IV. Woodfield's Support Distinguished

In reaching our conclusion, we note that the cases relied upon by Woodfield present very different arbitration agreements than that at issue in this case. For instance, in *Bishop*, a mutual promise to arbitrate was found to be sufficient consideration to support the parties' Arbitration Agreement, and "[t]he fact that the parties agreed to allow [the defendant] to litigate any breach of the sublease is not itself fatal since [the] parties do not have to agree to identical obligations." *Bishop*, 316 Ill. App. 3d at 1198. In *Bishop*, both parties were bound by their arbitration agreement except in the limited circumstance regarding the sublease. However, in the case *sub judice*, Woodfield was exempted from the parties' Arbitration Agreement for a plethora of reasons.

Similarly, in *Aste*, 312 Ill. App. 3d at 976, the parties' mutual promise to arbitrate was found to be sufficient consideration where "the parties agreed to arbitrate any disputes arising out of [the] transactions between them." Although the language in *Aste* is mimicked in the parties' Arbitration Agreement, in *Aste* there were no causes of action exempted from the arbitration proceedings.

Moreover, in *Browne v. Kline Tysons Imports, Inc.*, 190 F. Supp. 2d 827, 829 (E.D. Va. 2002), the court found arbitration language whereby both parties "knowingly waived their rights to a judge or jury trial" to mandate the parties' dispute be sent to arbitration. In *Browne*, unlike the case before us, there was no discussion regarding what causes of action, if any, were excluded from the parties arbitration agreement.

We also note that Woodfield's assertion that "Illinois courts have consistently upheld similar arbitration agreements" is without merit. For instance, in *Father & Sons, Inc. v. Taylor*, 301 Ill. App. 3d 448, 450, 703 N.E.2d 532 (1998), the arbitration clause at issue was part of the parties' contract and imposed the same obligations on each party:

> " 'Any controversy or claim arising out of or relating to this contract or the breach thereof shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.' "

Similarly, in *Matthews v. Rollins Hudig Hall Co.*, 72 F.3d 50 (7th Cir. 1995), the parties' contract included an arbitration clause imposing the same obligations on each party. In *Sheller*, 957 F. Supp. at 154, "bilateral consideration" was found where the defendant agreed to consider the plaintiff for employment if plaintiff, upon employment, agreed to abide by company rules which included the arbitration of all claims.

In its motion citing supplemental authority to this court, Woodfield provides citation to *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 808 N.E.2d 957 (2004), and states "[t]he Illinois Supreme Court has recently ruled that another consumer protection statute \*\*\* does not prohibit binding arbitration agreements." We have no disagreement with that statement. However, the issue in this case is not whether Woodfield, as part of its sales transactions, could present binding arbitration agreements to its customers. Instead, this case concerns, in Woodfield's own terms, "whether sufficient consideration exists for the [parties'] agreement to arbitrate." We answer that question in the negative.

## V. *Jensen v. Quick International*

We also address the fact that following the publication of our decision in *Vassilkovska*, 351 Ill. App. 3d 742, 814 N.E.2d 887, our supreme court vacated our decision and ordered us to reconsider pursuant to *Jensen*, 213 Ill. 2d 119, 820 N.E.2d 962. In *Jensen*, the plaintiff sought to rescind a franchise agreement with the defendant on the grounds that the franchise agreement violated the Franchise Disclosure Act of 1987 (Franchise Act) (815 ILCS 705/5 (West 2002)), because the franchisor had failed to register with the Illinois Attorney General's office at the time of the sale. *Jensen*, 213 Ill. 2d at 121. The defendant sought to stay any litigation on the agreement pending arbitration pursuant to the arbitration clause contained within the parties' agreement; the circuit court denied the motion. *Jensen*, 213 Ill. 2d at 121. The appellate court affirmed, holding that because compliance with the Franchise Act was a condition precedent to an enforceable contract, the parties' agreement and the arbitration clause contained therein were not binding, as a contract could not exist if the Franchise Act had been violated. *Jensen*, 213 Ill. 2d at 124-25. The appellate court also found that the question of whether a contract existed was a question of law for the court. *Jensen*, 213 Ill. 2d at 122. Our supreme court disagreed.

In *Jensen* our supreme court concluded that registration, although required by the Franchise Act, was not a condition precedent to the enforcement of a franchise agreement. *Jensen*, 213 Ill. 2d at 126. The Franchise Act provides that when a violation occurs, rescission and damages are available; however, the Franchise Act does not provide that agreements in violation of the Franchise Act are invalid or unenforceable. *Jensen*, 213 Ill. 2d at 126-27. Moreover, our supreme court noted that rescission presumed the existence of an otherwise valid and enforceable contract. *Jensen*, 213 Ill. 2d at 127. Therefore, because an action to rescind does not challenge a contract's existence,

it can be presented to an arbitrator. *Jensen*, 213 Ill. 2d at 127. Our supreme court also noted that the Franchise Act gave a franchisee the option of seeking rescission, but did not mandate that he do so. *Jensen*, 213 Ill. 2d at 127. Finally, our supreme court noted, *inter alia*, that Illinois public policy favors arbitration as a means of resolving disputes and allowing a party to avoid arbitration, by merely alleging that no contract existed, undermined Illinois public policy. *Jensen*, 213 Ill. 2d at 128.

*Jensen* was followed in *General Motors Acceptance Corp. v. Johnson*, 354 Ill. App. 3d 885, 822 N.E.2d 30 (2004). In *Johnson*, the issue was whether a consumer could avoid a contract and arbitration agreement based on a car dealership's failure to provide notice that she had three days to cancel the parties' contract, pursuant to section 2B of the Consumer Fraud Act (815 ILCS 505/2B (West 2002)). The *Johnson* court determined that the legislature did not specify that a contract entered into in violation of the Consumer Fraud Act was invalid, unenforceable, or void; "[t]his option to ignore a violation and nevertheless enforce a noncompliant contract negates the conclusion that the contract would be automatically unenforceable if it violated the Act." *Johnson*, 354 Ill. App. 3d at 891. The *Johnson* court also found that a consumer could elect to waive the statute's requirements by specifically doing so or by failing to notify the seller that she wished to avoid the contract. *Johnson*, 354 Ill. App. 3d at 892. Therefore, after the cancellation period had expired, the contract would remain in force despite the violation. *Johnson*, 354 Ill App. 3d at 892. We also note that the *Johnson* court distinguished our now-vacated holding in *Vassilkovska* by emphasizing that the parties in *Johnson* had made a mutual commitment to the unilateral election of arbitration, and therefore, consideration was not illusory. *Johnson*, 354 Ill. App. 3d at 893-94.

Unlike in *Jensen* and *Johnson*, in the case *sub judice*, the parties' Arbitration Agreement was not part of their contract, but a separate document for which separate consideration was required. The plaintiff and Woodfield signed the Arbitration Agreement promising to, "waive any and all rights to pursue any legal action in a court of law." According to the parties' agreement, the consideration for each parties' signing the contract was that the other party agreed to arbitrate all actions. However, Woodfield's promise to arbitrate was illusory, as it had carved out for itself a list of all claims that it would potentially bring against the plaintiff and made those claims exempt from arbitration and viable in a court of law. In its effort to exempt itself from the parties' Arbitration Agreement for claims against the plaintiff, Woodfield violated Illinois's public policy in favor of arbitration.

In *Board of Managers of Chestnut Hills Condominium Ass'n v. Pasquinelli, Inc.*, 354 Ill. App. 3d 749, 754-57, 822 N.E.2d 12 (2004), an arbitration agreement was found to apply to a portion of the parties' contract regarding common property elements, but not to the parties' purchase contract. The purchase contract, on which the condominium association's complaint was based, sought redress for defects not defined as common elements under either the limited warranty or the condominium declaration. *Pasquinelli*, 354 Ill. App. 3d at 757. The *Pasquinelli* court then found the condominium association's allegations were not subject to mandatory arbitration, as the arbitration agreement only applied to the limited warranty covering common property elements. *Pasquinelli*, 354 Ill. App. 3d at 757.

Similarly, in this case the parties' purchase contract and Arbitration Agreement are separate documents. As the Arbitration Agreement is not encompassed by the parties' purchase contract, the Arbitration Agreement requires its own consideration. As stated earlier, we find Woodfield's retention of the right to litigate all possible causes of actions against the plaintiff to have invalidated its consideration that was purportedly present in the opening clause of the parties' Arbitration Agreement. In effect, Woodfield failed to provide any consideration to support the parties' Arbitration Agreement. Moreover, Woodfield's argument to the trial court that it would agree to a unilateral modification of the parties' Arbitration Agreement, *i.e.*, to "forbear" its right to seek a judicial remedy in claims against the plaintiff, carries no weight as that agreement was not in place at the time the Arbitration Agreement was signed by the parties. *Doyle v. Holy Cross Hospital*, 289 Ill. App. 3d 75, 79, 682 N.E.2d 68 (1997) (although contract principles allow parties to modify their contract and consideration is usually found to exist where the obligations of both parties are varied, a modification solely for the benefit of one of the parties is unenforceable).

■ We find that the Arbitration Agreement, as a separate and distinct contract between the parties, lacked consideration from Woodfield as it exempted itself from arbitrating all conceivable claims against the plaintiff. It is Woodfield that, by virtue of excluding every conceivable claim it may have had against the plaintiff from the arbitration process, has made the Arbitration Agreement a nullity, which, in effect, goes against Illinois's public policy favoring arbitration. See *Jensen*, 213 Ill. 2d at 128-29.

We therefore affirm the trial court's denial of Woodfield's motion to dismiss and compel arbitration.

34

## CONCLUSION

For the foregoing reasons, the trial court's denial of Woodfield's motion to dismiss and compel arbitration is affirmed.

Order affirmed.

BURKE, P.J., and WOLFSON, J., concur.